CASE 58—PETITION ORDINARY—FEBRUARY 23.

# Whitehead, &c., vs. Root, &c.

### APPEAL FROM CARROLL CIRCUIT COURT.

1. A contract by which distillers, engaged at the time it was entered into in the manufacture of whisky, sell "ten thousand dollars' worth of whisky at twenty-one cents per gallon," to be delivered at any time within twelve months from date—the whisky not being on hand or manufactured at the date of the contract—is valid and enforceable, being regarded as a special or executory agreement for the future sale and delivery of the subject of the contract.

2. Allegation of an answer that the writing sued on was obtained from the defendants by fraud, covin, and misrepresentation of the plaintiffs, is a good plea. It is not a mere conclusion of law, but the averment of a substantive and traversable fact.

3. An answer contained three paragraphs. Plaintiffs demurred to each, and demurrer overruled, and they excepted, but elected to stand by the demurrer to the first paragraph, and thereupon judgment rendered against them in the action. The first paragraph being held by the court of appeals to present no sufficient defense to the action, the plaintiffs, upon the return of the cause, are entitled to a trial of the issues made by the other paragraphs, which were of a character to require no reply but the facts stated in which stood controverted by law.

This action was brought by appellants upon the following contract: "We, William Root & Company, have this day sold to G. G. Whitehead, Charles A. Sanders, Wayland Tandy, and William H. Tandy, ten thousand dollars' worth of whisky at twenty-one cents per gallon. And we, the said William Root and Company, principal, and John T. Berry, William H. Harrison, William Donaldson, and J. W. Dunn, securities, covenant with the said Whitehead, Sanders, Wayland Tandy, and William H. Tandy, to deliver to them, the said Whitehead and others, or to their agent, the ten thousand dollars' worth of whisky above named, either in the city of Louisville, Kentucky, or Cincinnati, Ohio, at any time within twelve months from this date, in good barrels and good condition—the particular time and place for the delivery of each lot of said whisky to be designated by the purchasers, the said Root and Company paying all charges for wharfage, freight, inspection, and gauging. All of said whisky to be merchantable and above proof, but the quantity to be estimated, taking into consideration its

proof, according to the rules of trade in whisky. Said whisky to be delivered, as above required, in quantities not to exceed four hundred barrels in any one week. The ten thousand dollars above named is this day in hand paid to the said Root & Co., the receipt whereof is hereby acknowledged by them. Given under our hands this 29th day of October, 1858.

(Signed)                "WM. ROOT & CO.,
                          "JOHN T. BERRY,
                          "WM. H. HARRISON,
                          "WILLIAM DONALDSON,
                          "J. W. DUNN.

"Attest: H. Cox,
            SCOTT TANDY."

A demurrer to the petition having been overruled, the defendants, Berry, Harrison, Donaldson, and Dunn, filed the 1st, 2d, and 5th paragraphs of their answer—objections to the filing of paragraphs 3 and 4 having been sustained by the court. The plaintiffs demurred to each of the three paragraphs filed; demurrer overruled, and plaintiffs except and elect to stand by the demurrer to the first paragraph of the answer. The plaintiffs saying nothing further, the court rendered judgment for the defendants who answered. Against Root & Co. judgment was rendered by default for want of answer upon writ of inquiry, and verdict for $12,539 68. The case is here upon appeal by the plaintiffs, and cross appeal by Root & Co.

JOHN RODMAN, for appellants, cited 2 *Parsons on Contracts*, page 185; *Gray vs. Williams, MS. opin.*, 1857; 5 *How. N. Y. Prac. Rep.*, 15; 4 *Ib.*, 347; *Ib.*, 98; 3 *J. J. Mar.*, 626; 2 *Bibb*, 321.

T. N. & D. W. LINDSEY, for appellees, cited 1 *Parsons on Contracts*, pp. 437, 438, *note g*; *Story on Sales, sec.* 184; *Williams on Personal Property*, 80, 81; *Bryan vs. Lewis, Ry. & Mood.*, 386; 1 *Bibb*, 448; 3 *Marsh.*, 325; 2 *J. J. Mar.*, 267; *Chitty on Contracts*, 418.

H. MARSHALL, on same side, cited 2 *Kent Com.*, 602–3; 1 *Parsons on Contracts*, 437; *Ry. & Mood.*, 306; 1 *B. & C.*, 1; 2 *D. & R.*, 23; *Wheeler vs. Wheeler, ante,* —; 7 *Dana*, 61–8; 6 *Ib.*, 48; 24 *Maine*, 366; *Notes to Chitty on Contracts*, 375; 16 *B. Mon.*,

264; 3 *Marsh.*, 613; 1 *J. J. Mar.*, 107; 2 *Dana*, 161; 1 *Chitty Pleading*, 213; *Civil Code, sec.*, 115.

W. B. WINSLOW on same side.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

The contract sued upon in this case must be regarded as a special or executory agreement for the sale and delivery of $10,000 worth of whisky. That such was the intention of the parties is manifest upon the face of the instrument. The vendors were distillers, as appears from the record, and were engaged at the time the contract was entered into, in the manufacture of whisky at their distillery. The subject of the contract was " ten thousand dollars' worth of whisky at twenty-one cents per gallon," to be delivered at any time within twelve months from date. No specific lot of whisky is referred to, nor do the terms of the writing authorize the inference that the whisky was then on hand, or had been set apart, or had even been then manufactured by the vendors, or that the appellees so understood at the time they executed it. On the contrary, the most reasonable and natural construction of the agreement, giving proper effect to all its parts, is, that the whisky was to be thereafter manufactured, and to be delivered at the time and in the manner stipulated.

Even if the case of *Bryan vs. Lewis* were conceded to be good authority at the present day, the case under consideration is not within either its facts or its principles. That was the case of " one who sells what he has not now, and has made no contract for purchasing, and *has no definite right to expect*, as by consignment, but intends to go into the market and buy. It was held that he could not enforce it." But this doctrine was directly overruled in the late case of *Hibblewhite vs. Mc-Morine*, (5 *M. & W.*, 462.) "Such a contract," says Parsons in his work on contracts, (1 *vol.*, *p.* 439,) "if enforceble, as by the later authority and the better reason it seems to be, must certainly be regarded as a contract for a future sale, and not as a present contract of sale; and, therefore, the property in the thing, when it is acquired by the proposed vendor, does not pass at once to the proposed vendee until the actual sale be made."

So, Chancellor Kent, in stating the requisites of a valid *executed* sale, says: "The thing sold must have an actual or potential existence, and be specific or identified, and capable of delivery, *otherwise it is not strictly a sale, but a special or executory agreement*"—referring to several authorities. (See also *Chitty on Contracts*, p. 418.)

In every completed sale, the property in the thing sold passes to the purchaser, or, according to the definition given by Blackstone of a sale, there must be a "transmutation of property from one man to another, in consideration of some price or recompense in value." And it is for this reason that all the authorities concur in laying down the rule just stated, that there can be no valid sale unless the thing sold have either an actual or potential existence at the time of the sale. For it would be absurd to say that there could be a transmutation of the property, from one man to another, in a thing which had no existence, actual or potential.

But neither the rule itself, nor the reason on which it is founded, has any application to an executory agreement for a future sale. And in the failure to distinguish between these two distinct classes of contracts, lies the fallacy of the whole argument by which the counsel for the appellees attempt to prove that the contract before us is invalid and not enforceable.

The case of *Wheeler vs. Wheeler*, decided at the present term, does recognize the elemental law of *sales*, as contended for on the part of the appellees, and it does also expressly recognize the distinction just referred to, between *sales*, properly so called, which pass the title, and executory or special contracts for future sales in which no title passes, because no existing or specific thing is sold, but which entitle the party injured by a breach of the contract, to an action for the recovery of such damages as he may have sustained in consequence of such breach.

It follows from this view, that the facts set forth in the first paragraph of the answer, presented no valid defense to the action, and the court erred in overruling the demurrer to that paragraph.

We are of opinion that the demurrer to the second and third paragraphs was properly overruled.

The allegation of the second paragraph is, that the writing sued on was obtained from the defendants by fraud, covin, and misrepresentation of the plaintiffs. This is not, as seems to be supposed, the statement of a mere conclusion of law. It is the averment of a substantive and traversable fact. This was repeatedly held to be a good plea in cases decided before the adoption of the Civil Code; and there is nothing in the section of the Code referred to (*sec.* 115) which can be construed as operating to change the law in this particular.

And although the fifth paragraph of the answer contains a large amount of useless and redundant matter, it does, nevertheless, set forth a state of fact which, if true, must be deemed sufficient to defeat the action.

The record shows that the plaintiffs excepted to the action of the court in overruling their demurrer to each paragraph of the answer, and that they elected to stand by the demurrer to the first paragraph. As that paragraph is held to present no sufficient defense to the action, the plaintiffs will of course be entitled to a trial of the issues made by the second and fifth paragraphs. They were not bound, or even allowed by the Code to reply; but the facts stated in those paragraphs stood controverted by law.

For the error mentioned the judgment is reversed, and the cause remanded with directions to sustain the demurrer to the first paragraph of the answer, and for further proceedings not inconsistent with this opinion.

There is no error in the judgment against Root, &c., and the judgment is affirmed upon their cross appeal.