## Hunt, et al. v. Smith, et al.

(Decided May 10, 1921.)

## Appeal from Pike Circuit Court.

1.  Deeds—Expectancy Not Subject of Contract of Sale by Deed.— The expectancy of an heir apparent to inherit his father's estate cannot be made the subject of contract of sale by deed of general warranty, or enforced in equity after the death of the father. To make a contract of bargain and sale valid, there must be a thing or subject matter to be contracted for; and if the subject matter is not in esse at the time of the contract, no rights can be acquired under it.

2.  Deeds—Contract Void When Thing Essential Absent.—In every valid grant there must be a grantor, grantee and thing to be granted. When there is no subject matter—nothing in esse—about which a contract can be made—the thing essental to the validity of a contract is absent, hence such contract is declared by the law to be void, and, if void, no party to it can maintain an action upon it. A wise public policy produced the law fixing the status of parties to such a contract, and if it be wholesome for the law to declare it invalid, such contract should not be enforced by a court of equity in defiance of the law and wise public policy.

3.  Deeds—When Void There is No Right of Action for Breach of Warranty—Estoppel.—The contract for and conveyance of the expectancy of an heir apparent to inherit his father's estate being void, the warranty in the deed is also void; consequently, the fact that the grantee takes nothing by the deed, can give him no right of action against the grantor for a breach of the warranty. Nor will the grantee, though placed by the grantor in possession of land following a sale and conveyance to him by the latter of his expectancy to inherit it from his father, upon being dispossessed

of the land by the father and true owner of the title, be allowed under any rule of estoppel, legal or equitable, to recover of the grantor the consideration paid him for his expectancy, or the value of such improvements as he, the grantee, may have put on the land while in his possession.

4. Contracts—When Forbidden by Law No Recovery Under.—It is a well known rule of law, that when a party deliberately enters into a contract forbidden by law, he cannot recover upon the express contract, nor will the law imply one for him.

WILLIS STATON and W. G. W. RIDDLE for appellants.

J. C. CANTRELL and ROSCOE VANOVER for appellees,

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Some time prior to the year 1900 John W. Smith, of Pike county, this state, under proper proceedings instituted in the Pike circuit court, was by the verdict of a jury and judgment of that court found and declared to be a person of unsound mind and sent to the lunatic asylum at Lexington, Kentucky, for confinement and treatment, where he remained until his death in the year 1917. When incarcerated in the asylum and at the time of his death he owned two adjoining tracts of land, one of 227, the other of 54 acres, in Pike county. He had and was survived by seven children, the appellees, Montville Smith and others, each of whom, while the father was still alive and owner of the lands, sold and by a deed of general warranty attempted to convey to Tilden Hunt and Jane Varney, two of the appellants herein, and J. B. F. Varney, the husband of Jane Varney, what purported to be the grantor's undivided interest of one-seventh in the lands of their father, John W. Smith, each of such interests admittedly being a mere expectancy. The first of these seven deeds was executed in 1897, the last in 1903, and when made the several grantors were residing on the lands as tenants by sufferance of their father, the sole owner. By virtue of the delivery to them of the deeds the three grantees took possession of these lands, which they held until ousted of such possession by a judgment of the Pike circuit court, rendered November 6, 1914, in an action brought against them by the committee of the lunatic, John W. Smith, to cancel the several deeds made them by his children and recover the lands, which judgment declared void and set aside the deeds and restored to the committee, for the benefit of the lunatic, possession of the lands.

April 4, 1915, the year following the rendition of the judgment referred to, J. B. F. Varney, one of the grantees in the several deeds mentioned, then domiciled in Pike county, died intestate, survived by his wife, the appellant Jane Varney, and the following named heirs at law: George Varney and Asa Varney, children, and Alice Blackburn, Pricy Blackburn and Maria Blackburn, grandchildren, left by a deceased daughter of the intestate. May 15, 1917, this action was instituted in the Pike circuit court by the appellants, Tilden Hunt, Jane Varney, widow of J. B. F. Varney, deceased, two of the grantees in the deeds hereinbefore mentioned, and the above named heirs at law of J. B. F. Varney, the third grantee therein, against the appellee, Mont Smith, and others, children of John W. Smith and grantors in the deeds, seeking the recovery of damages against them respectively, for an alleged breach by each of the warranty contained in the deed made by him to J. B. F. Varney, deceased, and the appellants, Tilden Hunt and Jane Varney, resulting from the alleged loss to the latter and heirs at law of J. B. F. Varney of the lands claimed to have been thereby conveyed.

The petition set forth the date and terms of each deed, description of the lands, the interest therein conveyed by the grantor and the consideration paid for such interest; alleged the eviction of the grantees from the lands by the judgment of the court in the action brought against them by the committee of John W. Smith, in making a defense, in which action they were compelled, as alleged, to employ an attorney to whom they paid a reasonable fee of $500.00; and, in addition, that the appellant, Tilden Hunt, and J. B. F. Varney, while in possession of the lands under the several deeds from the children of Smith, erected and made necessary lasting and valuable improvements thereon at a reasonable cost to Hunt of $3,000.00, and to Varney of $5,000.00, thereby, as alleged, increasing the vendible value of the lands to the aggregate amount of these two sums; and for these amounts, the consideration paid the appellees, respectively, for the lands, with interest and the attorney's fee expended in the former action, judgment was prayed against the latter.

After the institution of the above action, and before the appellees had made any defense to same, their ancestor, John W. Smith, who had continued of unsound mind and remained an inmate of the Lexington Lunatic Asy-

lum, died intestate, leaving the appellees as his only heirs at law. Thereafter appellants filed in the pending action an amended petition setting up the death of John W. Smith and alleging that the appellees by reason thereof inherited and became the owners of the lands described in the original petition, their title to which, through the several deeds of general warranty previously made by them to Tilden Hunt, Jane Varney and J. B. F. Varney, deceased, became perfected in the two surviving grantees and the heirs at law of the deceased one; and that the appellees are by the deeds referred to and warranties contained therein estopped to set up, as against appellants, any claim to the lands in question. By the prayer of the amended petition the court was asked to adjudge the appellants the owners and entitled to the possession of the lands in controversy and to quiet their title to same; but that if held not entitled to recover the lands that they be awarded, as prayed in the original petition, damages against the appellees as for a breach of the warranty contained in the deeds by which the latter undertook to convey the lands in question to J. B. F. Varney, deceased, and the appellants, Tilden Hunt and Jane Varney, the three grantees named therein.

Upon being ruled by the court to paragraph the petition as amended, the appellants did so by making the original petition paragraph No. 1, and the amended petition paragraph No. 2. Thereupon appellees filed a general demurrer to the petition as amended and to each paragraph thereof, which the court sustained as to each of the paragraphs and to the pleading as a whole. Appellants' refusal to plead further resulted in the dismissal of the action. Complaining of the judgment entered in pursuance of these rulings the latter have appealed.

As it clearly appears from the facts alleged in the petition and amended petition, which are supported by the recitals of the deeds exhibited from the heirs at law of John W. Smith to the grantees named therein, that the latter purchased and were conveyed only the possible right or expectancy of the several grantors to inherit, as his heirs at law, the lands of their father at his death, it is patent that the questions passed on by the lower court and now presented for decision by the appeal, were and are fully raised by the appellees' demurrer. The primary question we are called upon to decide is, may the expectancy of an heir apparent to inherit his father's estate be made the subject of contract of sale by deed of

general warranty, and enforced in equity after the death of the father? Under the common law this could not be done. 2 Blackstone, 297.; 2 Kent, 602. To make a contract of bargain and sale valid, there must be a thing or subject matter to be contracted for, and if the subject matter is not *in esse* at the time of the contract no rights can be acquired under it. This principle, as it should be applied to the case in hand, is quaintly stated in Coke Litt. 262; 2 Bac. Abr., Title "Bargain and Sale," page 4, as follows: "If a son and heir bargain and sell the inheritance of his father, this is void, because he hath no right in himself."

By the common law such a contract is declared void because contrary to public policy; and as there is no statute in this state changing the common law on this subject, the rule stated obtains and is still in force in this jurisdiction. Indeed, the rule has been steadfastly adhered to in numerous cases decided by this court, some of the more recent of which are here cited: Wheeler's Exors. v. Wheeler, 2 Met. 474; Whitehead v. Root, 2 Met. 587; Alves v. Schlessinger, 81 Ky. 290; McCall's Admr. v. Hampton, et al., 98 Ky. 166; Elliott v. Leslie, 124 Ky. 553; Spears v. Spaw, 118 S. W. 276; Smith v. Dinguid, etc., 8 Rep. 64; Furnish's Admr. v. Lilly, 845 W. 734; Hall v. Hall, 153 Ky. 379; Burton v. Campbell, etc., 176 Ky. 495.

As it would unduly extend the opinion to notice in detail all the authorities, *supra*, comment regarding them will be confined to such as are directly analogous in point of fact and the conclusions expressed to the instant case. In Wheeler's Exrs. v. Wheeler, *supra*, it was held that the son who, while the father was alive, executed to his brother a deed purporting to convey his, the grantor's, interest in his father's slaves and personal estate, was, notwithstanding such conveyance, entitled to recover, after the father's death, the interest in the latter's estate which his deed purported to convey the brother; furthermore, that the sale and conveyance were made by the son with the assent of the father, did not divest the father of any right to the property, and conferred none on the son, as the former still had the right to dispose of it as he pleased, without regard to the latter's wishes or contract.

In Alves v. Schlessinger, *supra*, the conveyance by the heir was for a valuable consideration. After the death of the ancestor a creditor of the heir, who had undertaken to sell his interest in his ancestor's estate during the latter's lifetime, sued to subject such interest to the pay-

ment of his debt. The party to whom the contract of sale had been given by the heir before the ancestor's death claimed the interest under the contract, and resisted the creditor's right to subject it to the payment of his debt. On appeal this court sustained the claim of the creditor.

In McCall's Admr. v. Hampton, *supra*, the opinion contains an elaborate discussion of the doctrine under consideration and an exhaustive review of many authorities bearing upon it. In that case Wade Hampton, the heir, three years before the death of his father, William Hampton, sold and by deed of general warranty attempted to convey to a brother, Charles Hampton, an expectancy in the landed estate of the father. The appellant, who held a debt against Wade Hampton, sued him and obtained an attachment, which was levied on what was claimed to be his interest as an heir at law in the lands left by the father, William Hampton, whose death had shortly theretofore occurred. Charles H. Hampton, to whom Wade Hampton had executed before the death of his father the deed purporting to convey Charles his interest in the father's lands, having also died, his personal representative filed his petition in the action brought by the creditor against Wade Hampton and was made a defendant therein. His petition, which was made an answer, set up claim to Wade Hampton's interest in the lands by virtue of the deed made by him to Charles H. Hampton prior to the father's death, and, in substance, alleged that at the time of the execution of the deed Wade Hampton was suffering from a cancer and was without means to procure medical treatment for his malady; that his father had expressed a desire to sell part of his land to aid Wade but was then too infirm to make such disposition of his property; that in order that Wade might procure medical treatment in consideration of $800.00 paid the latter by Charles Hampton he sold and by the deed in question conveyed Charles Hampton "all right, title and interest he then had, or might thereafter become entitled to, from the estate of his father, William Hampton, of whatsoever character," and did in that way convey to him his whole interest in the father's lands as fully as if he were then seized and possessed of the same. To this pleading a demurrer was filed and overruled. From the judgment showing this overruling of the demurrer an appeal was prosecuted by the creditor of Wade Hampton.

In passing on the question presented by the appeal this court, reversing the judgment, held, in substance, that a naked possibility or contingency not founded upon a right or coupled with an interest cannot be assigned or sold. Therefore, the expectancy of a son to inherit his father's estate is not the subject of assignment or sale, and the contract is not enforcible either at law or in equity after the father's death.

After a review of the authorities relied on to support the rule of law, *supra,* the opinion adverts to the contrary doctrine as announced in Pomeroy's Eq. Jurisprudence, supported by East Lewisburg, etc., Co. v. Marsh, 91 Penn. St. 96, therein cited: "That the assignee (or purchaser) of the expectancy acquired at once a *present* equitable right over the future proceeds of the expectancy, which is of such certain and fixed nature that it is sure to ripen into an ordinary equitable *property right* over those proceeds as soon as they come into existence by the transformation of the expectancy into an interest in possession; that there is an equitable ownership of property in abeyance to be changed to an absolute property upon the happening of the future event." In combatting the view of the law thus stated by the learned author referred to, the opinion proceeds as follows:

"Here we have the assignee or vendee taking a present right in a thing not in existence and in the proceeds of an expectancy which may never materialize. To reach his conclusion he utterly disregards the legal significance of the words 'naked possibility or expectancy.' They import a hope of succession but not a certainty, as implied by the statement that they were sure to ripen into a property right. His premises are false and conclusions erroneous.

"It is axiomatic that in every valid grant there must be a grantor, grantee and a thing to be granted. When there is no subject matter—nothing *in esse* about which a contract can be made—the essential thing to the validity of a contract is absent, hence such contract is declared by the law to be void. If it be void then no party to it can maintain an action upon it. A wise public policy produced the law which fixed the status of parties to such a contract. If it is wholesome to declare such contract invalid, why should courts of equity enforce such contract in defiance of the law and wise public policy? If this is to be the practice of courts of equity, then the common law on this subject is a dead letter and inoperative. Why

should the common law declare such contracts invalid and void if courts of equity have the power to vivify and enforce them? If this is to be the rule, why not declare the common law not in force on this subject? It seems to us to be a travesty upon common sense for the law to declare a contract void and yet say that it is enforceable in a court of equity. Some courts hold that the expectancy of an heir to inherit his father's estate.is not an interest capable of assignment in equity any more than at law, and we agree with such courts upon the question.

"It seems at this late day it is needless to discuss the wisdom and policy of a law which has been sanctioned for so many generations, and we do not feel that we are called upon to defend it. A strict adherence to it will save multiplying contentions, protect the improvident children and heirs at law from fraud and deceit, save free and untrammelled the actions of the possessors of estates in their distribution. If there were no other reasons for adhering to the rule, those just suggested would be all sufficient, in our opinion, for doing so."

In Spears, etc., v. Spaw, *supra,* we also said:

"The rule is that it is essential to the legal validity of a contract that the thing sold have an actual or potential existence, and that a mere possibility or contingency, not founded on a right nor coupled with an interest, cannot be the subject of a sale or assignment."

Again, in Elliott v. Leslie, *supra,* as if to give added emphasis to what previously had been so often reiterated on this subject, we said:

"We are not disposed to give our assent to a doctrine, however ancient and general it may be, that is rested upon so unsubstantial a foundation as the one that upholds the right of an heir to traffic in something that has no existence, and may never have."

The opinion in this case also declares that the opinion in Wheeler's Exrs. v. Wheeler, Alves v. Schlessinger and McCall v. Hampton, *supra,* in effect overrule those of the cases of Lee's Exr. v. Lee, 2 Duvall 134, and McBee v. Myers, 4 Bush 356, sustaining sales of expectancies made with the consent of the parent.

In Burton v. Campbell, *supra,* a more recent case than any so far mentioned, the purpose of the court to permit no modification of the doctrine that the sale or assignment of a mere expectancy is against the public policy of the state and for that reason void, is patent, and among

the reasons it asserts for its rigid enforcement are the following:

"It will be found from an examination of decisions from this and other courts that the public policy inhibiting such contracts is founded upon the law's regard for the protection of the weak, the youthful and inexperienced. If they should be permitted to sell, convey or transfer their possible inheritances, they would be many times imposed upon by crafty and more experienced speculators taking advantage of that rule of conduct known especially to influence the actions of the youthful and less experienced that 'a bird in the hand is worth two in the bush.' Moreover, to give validity to such contracts would render a stranger to the ancestor or person from whom the expectancy is to be derived beneficially interested in the event of his death so that he might as soon as possible come into possession of the purchased interest of the prospective heir. Such purchaser would not be influenced by the ties of relationship in the continued life of the ancestor, and thus an opportunity would be afforded, unrestrained by such ties, to hasten the vesting event, and for this reason it would be against public policy to offer such temptations. This principle of public policy is analogous to and is on a parallel with another well known one in the law forbidding one not interested in the preservation of the life of another from becoming the beneficiary in an insurance policy issued upon the latter's life."

It will be found that the opinion in this case, as well as those of all the cases previously commented on, rejects a contention strongly relied on by the appellants in the instant case, viz.: that appellees are in equity and by their deeds to appellants and their covenants of general warranty, estopped to deny that the title to the lands inherited by them from their father upon the death of the latter *eo instante* inured to appellants' benefit. Regarding this contention we said:

"But this doctrine applies only when there is an effort to convey a present interest and title to specific property and to vest the vendee with such present interest, and does not apply in cases like this where the thing attempted to be conveyed is a mere expectancy only. In the latter case there is no intention to vest the purchaser with any character of present title to the thing attempted to be conveyed, which, as we have seen, is not even *in esse*, and, therefore, not the subject of conveyance."

The petition manifests no right of recovery in the appellants for a breach of the warranty contained in the deeds made them by appellees; the deeds being void, the warranties are likewise void.' This was held in Spears v. Spaw, *supra,* as in the opinion it is said:

"The contract and conveyance being void the warranty is also. As stated, the conveyance of a thing not in being—*i. e.,* an expectancy— is invalid and the whole contract with reference thereto is void."

Such was also the conclusion expressed in Altemus, etc., v. Nichols, 115 Ky. 506, in the opinion of which we said: "If then the deed containing the warranty is void every part of it must be ineffectual."

We think it equally true that the law bars any right of recovery by the appellants, upon any of the alleged equitable grounds set forth in the petition, of the purchase money paid by them to appellees for the expectancy conveyed them, or any part of the amounts expended by them in attorney's fees, or in making improvements on the lands. The contracts being void as against public policy no obligation was imposed by them either in law or equity that can be enforced. It has time and again been decided in this judisdiction that no right of action can be based on a contract that is contrary to public policy and void. In C. & O. Ry. Co. v. Maysville Brick Co., 132 Ky. 643, we said of a contract that was contrary to public policy:

"It is simply a case where the shipper seeks to obtain damages for a violation of a contract that is illegal and unenforcible. No right of action can be predicated on a contract that is contrary to public policy and void." Murphy v. Simpson, 14 B. Monroe 419; Van Meter v. Spurrier, etc., 94 Ky. 22; Calor Oil & Gas Co. v. Franzell, etc., 128 Ky. 715.

In McMahon v. Lewis, 4 Bush 138, the court, following a review of the authorities, said:

"All of these cases show that when a party deliberately enters into a contract forbidden by law, he cannot recover upon the express contract, nor will the law imply one for him. It would indeed be singularly inconsistent for the law to denounce an express contract as illegal and vicious, and then turn around and imply one for the parties." Chapman v. Halley, 117 Ky. 1004; Patterson, etc., v. Hamilton, 19 R. 825.

In 13 Corpus Juris, 496, the above rule is thus stated:

"Money paid under an agreement which is executed, whether as the consideration or in performance, cannot be recovered back, where the parties are *pari delicto.*"

The several contracts involved in this case were but bargains of chance, closely akin to, if not to be actually classed with, gambling transactions, and for that and other sufficient reasons already stated they were and are of a character denounced by law as against public policy, which made them void and in consequence unenforcible for any purpose; and this, it must be presumed, was known to all the parties to the contracts when they were made, who, therefore, took all the chances of whatever loss might fall upon them or any of them from their violation, or a court decision adjudging them void. Levi v. Dorhoefer, 188 Ky. 413, and cases therein cited. So it would seem that the facts here presented authorize the application to appellants' relation to the contracts in question of the rule *caveat emptor.* It is shown by the petition that appellants were evicted from the lands they claim to have purchased of appellees by judgment of the court in an action brought by the father of the latter, the owner in fee of the lands, and his committee; therefore, they are not, as alleged in the second paragraph of the petition, in a position to avail themselves of the alleged equitable rights therein claimed, and which, under the peculiar circumstances set forth in the opinion in the recent case of F. P. Flatt v. John F. Flatt, 189 Ky. 801, in rescinding a contract conveying an expectancy, it was thought proper to allow the purchaser.

It appears from the facts stated in the opinion of that case that one J. M. Flatt died the owner of 133 acres of land, which he by will devised his widow for life, with remainder equally to his five living children and one grandson, F. P. Flatt. More than a pear before the testator's death his son, John F. Flatt, and daughter, Maggie Woodward, both later becoming devisees in remainder under his will, by separate deeds of general warranty and apparently with the testator's knowledge conveyed to their nephew, W. O. Flatt, their purported undivided one-sixth interest each in the testator's land, for which the grantee paid each of them $325.00.

W. O. Flatt, the purchaser, died in 1909 intestate, and in a suit by his administrator to settle his estate two parcels of the 133 acres, containing about 65 acres and repre-

senting the two interests conveyed to him by John S. Flatt and Maggie Woodward, and another one-sixth conveyed to him by another son of the testator, J. M. Flatt, were sold by order of court. At that sale F. P. Flatt became the purchaser at $2,459.00, and the sixty-five acres were conveyed to him by deed from a commissioner. In addition to the 65 acres thus acquired by him, F. P. Flatt owned a sixth interest in the 133 acres devised him by the will of J. M. Flatt. Shortly after the death of J. M. Flatt's widow, the life tenant of the land, F. P. Flatt and the owners of the remaining two-sixths in the 133 acres divided same and made deeds to each other for their respective parts thereof, F. P. Flatt thus obtaining 84 acres, including the 65 acres. He thereafter sold 19 acres to one Carter, which left him approximately 65 acres, of which he remained in possession, cultivating it as his own from 1912 until an action was instituted in 1918 against him and the other devisees of J. M. Flatt and their assigns by the appellees, John F. Flatt and Maggie Woodward, for partition of the whole 133 acres and for rents for the years 1913 to 1917, inclusive. In their petitions appellees only sought to have their interest in the 133 acres allotted to them out of the remaining 65 acres held by the appellant, F. P. Flatt, and to recover of him rents for same. The latter set up and relied upon his deed through W. O. Flatt from appellees, both as title and as estoppels against them. Failing in these pleas he asked by way of counterclaim judgment against appellees for the $325.00, with interest, which W. O. Flatt had paid each of them for their respective interests in the land and for improvements he put on the land to the extent the same had increased the value of such interest therein. It will thus be seen that in suing the appellant, F. P. Flatt, appellees sought to recover the respective interests which they had theretofore sold and conveyed his remote vendor, W. O. Flatt, thereby ignoring and treating as void the deeds they had made the latter upon the grounds that they conveyed to him a mere expectancy they had at the time in the land of their father, J. M. Flatt.

Upon the hearing of the case in the circuit court it restored to appellees the interests in the land sued for, set off their claims for rents against appellant's claim for the consideration and interest paid appellees by W. O. Flatt and disallowed appellants' claim for improvements made upon the land. The latter prosecuted an appeal

from the judgment of the circuit court and the appellees took a cross appeal. On the appeal we held that though the deeds of W. O. Flatt from John F. Flatt and Maggie Woodward were void because of their conveyance of a mere expectancy in the land of their father, appellant, as their vendee, was nevertheless entitled to recover the purchase price they received from W. O. Flatt for their interests in the land with interest, plus improvements made by appellant thereon to the extent that they increased the vendible value of the land, and these claims were allowed him, not because of any liability of appellees for a breach of the warranty contained in their deed to W. O. Flatt, but because appellant was a purchaser in good faith at the judicial sale of the interests they had conveyed W. O. Flatt and had been permitted by appellees to remain in undisturbed possession of the land for more than six years after their father's death and to make the improvements thereon with their knowledge and without any assertion of their right to recover the interests they had conveyed W. O. Flatt. And these equities were held sufficient to estop them from defeating appellant's claims relied on as estoppels against them. These equities were adjusted as determined in Ratterman v. Apperson, Exor., 141 Ky. 821, which involved the purchase of land made in good faith at a judicial sale though invalid, but involved no sale of an expectancy.

It will readily be seen that the facts in Flatt v. Flatt, *supra,* differentiate that case from the one at bar, in which no such equities exist as in that case. The appellants here were deprived by a judgment of court of the interests claimed in the lands, under the expectancies they had purchased, by the owner of the lands, before bringing their action against appellees; the improvements they placed thereon were all made during the life of such owner, and they escaped the payment of rents for the time they held the lands. They are presumed to have known the invalidity of the deeds they received and were not therefore purchasers in good faith.

The conclusions we have expressed render consideration of certain collateral questions raised by counsel unnecessary, therefore, they will not be passed on. As in our opinion the petition, as amended, failed to state a cause of action, the judgment sustaining the demurrer to same and dismissing the action is hereby affirmed. The whole court sitting.