**FEDERAL NAT. BANK OF SHAWNEE, OKL., v. NEW YORK LIFE INS. CO.**
**Civil Action No. 977.**

District Court, W. D. Oklahoma.

Nov. 11, 1944.

Mark Goode and John Goode, both of Shawnee, Okl., for plaintiff.

Geo. C. Abernathy, of Shawnee, Okl., and V. P. Crowe (of Embry, Johnson, Crowe, Tolbert & Shelton), of Oklahoma City, Okl., for defendant.

VAUGHT, District Judge.

The plaintiff brings this action to recover, for its ward, Minnie O. Cammack, on an insurance policy issued by the defendant on January 10, 1928, on the life of Allen J. Cammack, in which its ward is named as beneficiary.

The policy of insurance is what is known as a 15 year endowment policy and under its terms would mature on January 10, 1943. It contained the following provisions pertinent to the propositions raised:

"Assignment.—Any assignment of this Policy must be made in duplicate and one copy filed with the Company at its Home Office. The Company assumes no responsibility for the validity of any assignment."

"Change of Beneficiary.—The Insured may from time to time change the beneficiary, unless otherwise provided by indorsement on this Policy or unless there be an existing assignment of this Policy."

"Rights of Insured.—The Insured, during his lifetime, and without the consent of the beneficiary, may receive every benefit, exercise every right and enjoy every privilege conferred upon the Insured by this Policy, unless otherwise provided by indorsement hereon."

On July 11, 1940, an assignment of the policy to B. F. Fields was signed by Allen J. Cammack and Minnie O. Cammack, which bears the acknowledgment of Edna Mae Smith, a notary public of Pottawatomie County, Oklahoma. The full name of Benjamin Franklin Fields was written in the body of the assignment by an agent of the defendant company at a later date, to comply with the rules of the company. On July 22, 1940, Benjamin Franklin Fields, as assignee, obtained the sum of $7,769 on a loan on the policy. No part of these funds ever reached the assured or the beneficiary but went to Fields or his associates. On January 25, 1941, Allen J. Cammack died with no change of beneficiary in the policy. Proof of death was made by Benjamin Franklin Fields, as assignee, of said policy, and on February 18 1941, the defendant paid the death claim to him in the sum of $1198.17. No part of these funds ever reached the beneficiary named in the policy, the ward of the plaintiff herein. On June 6, 1941, Minnie O. Cammack was adjudged incompetent by the County Court of Pottawatomie County, Oklahoma. She appealed from that decision and subsequently, on July 29, 1941, was adjudged incompetent by the District Court in said county and state No guardian had ever been sought or appointed for Allen J Cammack during his lifetime.

The plaintiff contends that on July 11, 1940, Allen J. Cammack, aged seventy-four, was an insane person, wholly without understanding, and by reason thereof, the assignment is void; that upon the same date, Minnie O Cammack, aged seventy five, was an incompetent person; that Benjamin Franklin Fields was a designing person and notorious character with a criminal record, had no insurable interest in the life of Allen J. Cammack, and was not related to either Allen J. Cammack or Minnie O. Cammack.

The defendant denies that either Allen J. Cammack or Minnie O. Cammack was insane or incompetent on July 11, 1940, and that Minnie O. Cammack was insane or incompetent on February 18, 1941. It contends that it paid out the sums of money on the policy in good faith and with no notice of any impairment of the mental faculties of either Allen J. Cammack or Minnie O. Cammack upon the date of such payments. The defendant further contends that Minnie O. Cammack, by joining in the assignment, conveyed all her right, title and interest in the policy as beneficiary; that at the time of the assignment, she was fully aware of the mental condition of Allen J. Cammack and by joining in said assignment, knowing it would be delivered to the defendant and that the defendant would act in reliance thereon, thereby induced the defendant to pay out the sums of money on said policy innocently and in good faith, and that she and her guardian by reason thereof are estopped from now showing or claiming that Allen J. Cammack was insane at the

time of the execution of said assignment, or at the time of the proof of death; and that the said Minnie O. Cammack and her guardian are precluded from recovery on account of laches in not notifying the defendant of any alleged invalidity of the assignment until long after the death of Allen J. Cammack and until said sums of money had been paid out on the policy.

Upon the issues thus joined the cause was tried. The propositions must be determined by the law of the state of Oklahoma where the contract was made. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

First. Was Allen J Cammack insane and wholly without understanding on July 11, 1940, and if so, what was the effect of his execution of the assignment?

Section 22, Title 15 Okl.St.Ann., provides:

"A person entirely without understanding has no power to make a contract of any kind, but he is liable for the reasonable value of things furnished to him necessary to his support or the support of his family."

The burden was on the plaintiff to prove that Allen J. Cammack, on July 11 1940, was insane and entirely without understanding at the time of the execution of the assignment. The evidence discloses that the plaintiff has so established this fact conclusively  Having thus established this fact, what effect did the assignment have, so far as it concerned Allen J. Cammack?

In Connecticut General Life Ins. Co. v. Cochran et al., 95 Okl. 111, 218 P. 313, it was held:

"Where a grantor in a deed is incapable of comprehending that the effect of the deed when executed and delivered would be to divest such grantor of title to the land described in such deed, said grantor is as to such deed entirely without understanding within the meaning of section 4981, Comp. St.1921 [15 O.S.1941 § 22], and the deed is void and conveys no rights to the grantee or subsequent purchasers or incumbrancers in good faith."

In Dozier v. Schuermann, 175 Okl. 298, 52 P.2d 1063, it was held:

"A person entirely without understanding has no power to make a contract of any kind, and the liability of such a person is limited by section 9402, O.S.1931 [15 O.S. 1941 § 22]."

"In an action on contract, where it is asserted in defense that the defendant was entirely without understanding, it is not necessary that such defense be predicated upon a rescission of the contract by restoring or offering to make restoration to the plaintiff."

In First National Bank of Enid, Adm'r, v. Headrick, Adm'r, et al., 190 Okl. 164, 121 P.2d 566, decided February 3, 1942, the court followed Dozier v. Schuermann, supra.

Thus, it has been definitely settled in the State of Oklahoma that such a contract is utterly void, conveys no rights to either the grantee or subsequent parties who act on it even in good faith. In other words, such a contract is of no force or effect for any purpose. It is of no more force or effect than a forged instrument and transfers no greater rights.

Second. So far as the defendant is concerned, what effect, if any, did the joining in the assignment by Minnie O. Cammack have? Did it in any manner affect the invalidity of the assignment? What was the status of Minnie O. Cammack at the time of the assignment?

Allen J. Cammack reserved the right to change the beneficiary during the term of the policy.

In McMurtray v. McMurtray et al., 67 Okl. 50, 168 P. 422, it was held:

"The change of beneficiary in a policy of life insurance, which reserves to the insured the right to do so, made by the insured at a time when he was entirely without understanding, is void, and the right to the proceeds of the policy vests at the death of the insured in the original beneficiary.

"After the death of the insured, the beneficiary first named may contest the claims of the substituted beneficiary to the proceeds of the policy upon the ground of such want of mental capacity of the insured to make the change in the original contract."

Here the Supreme Court of Oklahoma specifically holds that the rights of the beneficiary, under such a policy of life insurance as we have in the instant case, vest at the death of the insured.

In Carpenter v. Knapp et al., 101 Iowa 712, 70 N.W. 764, 765, 38 L.R.A. 128, it was held:

"Where assured in a benefit society has the power to change the beneficiary, a ben-

eficiary named in the certificate has no vested interest therein, enabling him to assign it during assured's life."

In Ætna Life Ins. Co. v. Phillips, 10 Cir., 69 F.2d 901, 904, the court said:

"It will be noted that under the provisions of the policy proper, the right to change the beneficiary was reserved, and that the right to make any change in, or amendment to the policy was vested alone in the insured. These provisions clearly gave the insured the right to change the beneficiary without the latter's consent."

Under the authorities, the conclusion is inescapable that there was no necessity for Minnie O. Cammack to join in the assignment of the policy. And the fact that she did join in such assignment in no manner affected its validity. If she had any interest at all, it would have to be classed as an expectancy. The State of Oklahoma has no statute providing for the sale or assignment of an expectancy and such transactions are governed by the principles of the common law.

In McMahon v. Foley, 188 Okl. 552, 111 P.2d 1076, 1078, the court said:

"The question then presented is whether such an expectancy is assignable. Neither of the parties assert that any statute of this state has any bearing on the question and both resort to the principles of the common law as enunciated by text writers and the authorities from this and other states.

"Such assignments were, at common law, regarded as lacking a lawful subject matter and contrary to public policy. It was therefore the general rule that (as stated in 6 C.J.S., Assignments, § 14, p. 1057), 'An assignment by a prospective heir or devisee of his expectancy of acquiring an estate by descent or will is void at law.' See, also, 5 C.J. 858."

In Hunt et al. v. Smith et al., 191 Ky. 443, 230 S.W. 936, 939, 17 A.L.R. 588, 593, the court discussed the principle at great length and in approving the opinion in East Lewisburg Lumber & Mfg. Co. v. Marsh, 91 Pa. 96, quoted a portion of that opinion as follows:

" 'Here we have the assignee or vendee taking a present right in a thing not in existence and in the proceeds of an expectancy which may never materialize. To reach his conclusion he utterly disregards the legal significance of the words "naked possibility or expectancy." They import a hope of succession, but not a certainty, as implied by the statement that they were sure to ripen into a property right. His premises are false and conclusions erroneous. It is axiomatic that in every valid grant there must be a grantor, grantee, and a thing to be granted. When there is no subject-matter,—nothing in esse about which a contract can be made—the essential thing to the validity of a contract is absent; hence such contract is declared by the law to be void. If it be void, then no party to it can maintain an action upon it. A wise public policy produced the law which fixed the status of parties to such a contract. If it is wholesome to declare such contract invalid, why should courts of equity enforce such contract in defiance of the law and wise public policy?' "

So, as a legal proposition, on July 11, 1940, Minnie O. Cammack had nothing to assign and conveyed nothing by joining in the assignment. But the defendant contends that Minnie O. Cammack and her guardian are estopped. The evidence discloses that on July 11, 1940, Allen J. Cammack and Minnie O. Cammack were seventy-four and seventy-five years of age, respectively. Allen J. Cammack was entirely without understanding and Minnie O Cammack was incompetent within the meaning of the laws of Oklahoma to this extent, she for some cause was unable to properly manage and care for her property, unassisted, and by reason thereof would likely be deceived and imposed upon by artful and designing persons, and while she was not entirely without understanding, her capabilities to judge properly were impaired.

Such a situation was perfect for an artful and designing person or persons to enter. Such a person did enter into the lives of these aged people in one Benjamin Franklin Fields, sometimes known as Ben F. Fields and B. F. Fields, an ex-convict and at the time of the assignment on parole. He lived at the Mayo Hotel, Tulsa, Oklahoma, and was obligated to report every thirty days to C. A. Mayo, the proprietor of said hotel. Fields, at the time of the assignment, was well known in Tulsa and many other places in Oklahoma. He made no secret of his former record and was engaged in a scheme to organize an institution that had for its proposed purpose the rehabilitation of ex-convicts, and was giving it wide publicity. Fields, accompanied by associates, for some time had been visit-

ing the Cammack home at Shawnee, Oklahoma, and had gained the confidence of Minnie O. Cammack.

On July 9, 1940, the firm of Farmer and Duran, at Tulsa, Oklahoma, was an agent for the defendant. Someone, whose exact identity is not disclosed by the evidence, representing the law firm of Settle, Monnet and Clammer, also of Tulsa, brought the policy of insurance belonging to Allen J. Cammack to the office of Farmer and Duran and talked with T. W. McKenzie, the office manager, and inquired if their client could obtain the cash value of the policy. The result of this conversation was a letter written by McKenzie to the defendant's Oklahoma Branch Office, at Oklahoma City, dated July 9, 1940, which read:

"Re: 10 105 079—Allen J. Cammack

"The above policy will have a Cash Surrender Value, next January, of $8,010.

"The insured wishes to borrow all that he can at this time which we believe, irrespective of dividends, would be something over $7,800.

"Kindly forward loan agreements for his signature, immediately, and inform us if any dividends have been left to accumulate to the credit of the policy."

On July 10, 1940, said branch office delivered by mail the loan agreements to Farmer and Duran, at Tulsa, stating in the letter:

"We are attaching a set of loan agreements for $7769.00 which forms are to be signed by the insured in ink, in duplicate, in the presence of a disinterested witness as *Allen J. Cammack* and returned with the *policy* for endorsement."

The loan agreement blanks were delivered to Settle, Monnet and Clammer, who returned them apparently duly executed, together with the assignment of the policy, to Farmer and Duran, who transmitted them to the branch office at Oklahoma City on July 12, 1940, the letter of transmission stating:

"* * * For your information, it is to be mailed to B. F. Fields, 1005 Mayo Hotel, Tulsa, Okla.

"* * * The assignee is anxious to get the check at the earliest possible date, and we wish you would handle this transaction by Air Mail both ways."

On July 15, 1940, said branch office acknowledged receipt of the assignment blanks and loan agreements and stated:

"We note you have the name of the assignee on the assignment blanks as B. F. Fields. If this is the only name he has, we should be furnished with a statement to this effect. If not, please furnish us with his full name.

"In order for the loan to be completed without delay, we believe it will be better for you to have a new set of loan agreements signed by the absolute assignee only in ink, in duplicate, in the presence of a disinterested witness *in his full name.*"

On July 17, 1940, Farmer and Duran wrote said branch office as follows:

"Referring to your letter of July 15th, we now enclose new Loan Agreements for $7769.00 signed by Benjamin Franklin Fields, the absolute Assignee.

"Will you not kindly forward these to the Home Office by Air Mail, and ask that they return check to the Assignee at 1005 Mayo Hotel by Air Mail."

The assignment was on a printed form and in the body thereof there is contained a typewritten paragraph as follows:

"Absolute—This assignment gives the assignee the right to borrow against this policy, use the dividends, or surrender same at any time in accordance with the rules of the Company, without the consent of the insured."

The evidence does not disclose where the assignment and loan agreements were prepared, but it does disclose that the assignment and the claimant's statement in the proof of death dated February 8, 1941, apparently were prepared on the same typewriter, and it is fair to assume were prepared by Benjamin Franklin Fields, as the type is distinctive.

The evidence discloses that on July 11, 1940, at the time the assignment was executed, Fields was present at the Cammack residence in Shawnee. The notary testified that the instrument already had been signed by Allen J. Cammack at the time she arrived to acknowledge the execution of the instrument; that Minnie O. Cammack signed it in her presence; that she asked Allen J. Cammack if the signature was his and he either said it was or nodded his head; and that she did not read it and did not know what the instrument was. The testimony discloses that Minnie O. Cammack had no clear idea at the time the assignment was executed just what she was signing; her mind was utterly confused about the whole transaction. She testified

once that when the money came she got some of it and loaned Fields $5,000 of it. At another time she testified that she never received any of the money. The check for the loan was delivered to Fields and he endorsed it to Sam Clammer, at Tulsa, Oklahoma, who deposited $5,000 in his own account and took the balance in cash. There is no evidence showing that the insured or the beneficiary ever received any of the proceeds of the policy in any form, or that any of it was used for their benefit, or that any consideration passed from Fields or anyone else to Allen J. Cammack or Minnie O. Cammack for the assignment of the policy.

During all of the negotiations on the policy loan, no one representing the defendant saw Fields or displayed any interest in his identity except the request for his full name. The evidence of the defendant discloses that at least three persons employed in its home office had certain duties to perform in the approval of the loan. Dorothy L. Seubert testified that she "checked the policy and figured the loan value and interest." John A. Doyle testified that he had been a "warrant signer in the Policy Loan Division" for twelve years; that he "examined the paper and the file thoroughly as to its value, interest and title, the policy at all points in the case, and signed it as to my part in approval of granting this loan." And on being asked: "In so approving the loan, you relied upon the policy and the loan application and the loan agreement?" he replied: "Yes, sir, I did; and our records." Elmer A. Miller testified that he was the "Unit Head in the Division of Policy Loans;" that in July, 1940, he was "acting as a substitute Head at the time" and that his duties were "to supervise the general work of the Division, and in so far as the particular case in hand is concerned, under the rules it was necessary, because of the amount, to have my signature on the warrant with the Warrant Signer." And when asked the question: "In giving that approval you relied upon the policy, the application for the loan, the loan agreement and the office records?" he replied: "Yes, sir." All of these witnesses testified that they did not know the insured or the beneficiary and knew nothing of their mental condition, or their relations or dealings with the assignee Fields except as they appeared in the documents about which they testified.

Allen J. Cammack being entirely without understanding at the time of the assignment, the assignment was void, and the fact that Minnie O. Cammack joined in the assignment would not estop her from collecting on the policy at the death of the insured, as she had no interest in the policy at the time of the assignment with respect to which she could contract.

A similar situation was before the Supreme Court of Georgia in Farmers' State Bank v. Kelley, 155 Ga. 733, 118 S.E. 197, 198, wherein the court said·

"The court did not err in overruling the demurrer to the petition. The plaintiff, who was the wife of the insured, was designated in the policy as 'beneficiary by revocable designation.' As the insured had not named another as beneficiary in her place, if he had failed to make a valid assignment of the policy to the bank, the wife, on his death, would be entitled to the proceeds of the policy If the assignment made by the insured and the plaintiff to the bank was invalid and void because the insured was mentally incapable of making the assignment, then the assignment was, in effect, that of the wife alone, and as it was made to secure the debt of the husband it was null and void. Civil Code 1910, §§ 2993, 3007; Rountree v. Rentfroe, 139 Ga. 290, 77 S.E. 23; Union Cent. L. Ins. Co. v. Woods, 11 Ind.App. 335, 37 N.E. 180, 39 N.E. 205. Furthermore, she would not be estopped, because she had no interest in the policy with respect to which she could contract. Hicks v. Northwestern Mut. L. Ins. Co., 166 Iowa 532, 147 N.W. 883, L.R.A. 1915A, 872. Being without authority to assign the policy to secure her husband's debt, she would not be estopped from asserting title to it by having joined with her husband in its assignment to the bank. * * * Accordingly the petition set forth a good cause of action, and was not subject to the demurrer. If the case had been proved as laid, the plaintiff would have been entitled to a verdict."

In Hicks v. Northwestern Mut. Life Ins. Co., 166 Iowa 532, 147 N.W. 883, 886, L.R.A.1915A, 872, the Supreme Court of Iowa, in discussing the principle, said:

"But there is another aspect of this case which is worthy of appellant's attention even on the assumption that the wife had some right or interest in the policy, and that the effect of her alleged act would work a surrender or release of such right

on her part, while her husband, being insane, was not bound by the surrender on his part. In what manner can that fact operate to wholly release the company from its obligation as an insurer? The husband being insane, the insurance, so far as he is concerned, was left unimpaired; and, if the wife's act eliminated her as a beneficiary of that insurance, the company's obligation to the husband to pay the insurance to whomsoever he might appoint was in no manner discharged. Had the wife died before her husband, it would not have terminated the contract, but upon his death the insurance would have been due to the new beneficiary, if one had been appointed, and, if no appointment had been made, the payment would have been due to the administrator for the benefit of the estate of the husband. The plaintiff is not suing in her individual right, but as administratrix, and, if anything is due from the appellant to that estate, she is entitled to recover it, even though it be held that she has estopped herself from claiming it in her own right. In short, the utmost effect of her act would be to deprive her of her status as to the designated beneficiary. Stated otherwise, she could, if appellant is correct, cut herself off from any right to receive the benefit in her own right, but we are satisfied she could not relieve the defendant from its obligation to the insane husband, nor could she estop the administrator of his estate from the right to demand payment of the policy in case there was no named beneficiary qualified to recieve it at the death of the intestate. So, taking either theory as to the power of a beneficiary to surrender her interest under a policy of insurance which reserved the power to change such designation at will, we are led inevitably to the same conclusion—that the obligation of the insurer is not and cannot be affected without the consent of the person insured."

In Hunt et al. v. Smith et al., 191 Ky. 443, 230 S.W. 936, 940, 17 A.L.R. 588, 594, supra, the court, in citing and discussing its opinion in Burton v. Campbell, 176 Ky. 495, 195 S.W. 1091, said:

"It will be found that the opinion in this case, as well as those of all the cases previously commented on, rejects a contention strongly relied on by the appellants in the instant case, viz., that appellees are in equity, and by their deeds to appellants and its covenant of general warranty, estopped to deny that the title to the lands inherited by them from their father upon the death of the latter eo instante inured to appellants' benefit. Regarding this contention we said: 'But this doctrine applies only when there is an effort to convey a present interest and title to specific property and to vest the vendee with such present interest, and does not apply in cases like this, where the thing attempted to be conveyed is a mere expectancy only. In the latter case there is no intention to vest the purchaser with any character of present title to the thing attempted to be conveyed, which, as we have seen, is not even in esse, and, therefore, not the subject of conveyance.'

"'* * * This was held in Spears v. Spaw [Ky., 118 S.W. 275, 276, 25 L.R.A., N.S., 436], as in the opinion it is said: 'The contract and conveyance being void, the warranty is also. As stated, the conveyance of a thing not in being—i.e., an expectancy—is invalid, and the whole contract with reference thereto is void.'"

So in the instant case, the assignment being void, every part of it must be of no effect and estoppel as to the money paid out to Fields on the loan is not applicable.

Next it is contended by the defendant that Minnie O. Cammack and her guardian are estopped for the reason that she was fully informed as to the mental condition of her husband and joined in the assignment with him, knowing that the assignment would be delivered to the defendant and it would act in reliance thereon, believing it to be valid; that the defendant did rely on such assignment without such knowledge and paid out the proceeds of the policy in good faith; that because of such actions upon the part of Minnie O. Cammack, it would be inequitable to permit the plaintiff to recover; and, that the loss, if any, suffered by the beneficiary was occasioned by her own actions. The defendant seeks to invoke the rule that when one of two innocent persons must suffer by the acts of a third, the one who enables the third person to occasion the loss must suffer it, and what one induces another to regard as true, is the truth between them if the other has been misled thereby.

The evidence does not disclose that the defendant relied solely on the fact that she joined in the assignment. The defendant's witnesses testified they "relied upon the policy, the application for the loan, the loan agreement and the office records." The evidence nowhere discloses that the defend-

ant relied in the whole transaction on anything she said, did, or concealed, or that the defendant was induced to act upon anything she said, did, or concealed.

■ The defendant is a large life insurance organization, having contracts with thousands of clients involving millions of dollars of insurance. Despite the provision in its contract that it "assumed no responsibility for the validity of any assignment," it owed the duty to its policyholders not to pay out proceeds on its policies on forged instruments or void contracts. It could not ignore the laws of the state where its contracts are written, or circumstances that would excite the suspicions of an ordinarily prudent person in exercising ordinary care in dealing with its patrons.

Title 36 Okl.St.Ann. § 212:

"Every policy of life insurance made payable to or for the benefit of a married woman, or which after its issue is assigned, transferred, or in any way made payable to a married woman, or to any person in trust for her or for her benefit, whether procured by herself, her husband or by any other person and whether the assignment or transfer is made by her husband or by any other person, shall inure to her separate use and benefit, subject to the provisions of the preceding section, relating to premiums paid in fraud of creditors, and subject to any indebtedness on account of the policy: Provided, that the insured under such policy shall not be denied the right to change the beneficiary where this right is expressly reserved in the policy."

This statute alone was sufficient to cast upon the insurer the duty to make some inquiry into the transaction when such an assignment came to its attention. In the case at bar, the slightest inquiry would have developed the facts. An examination would have revealed the age of the insured; that the beneficiary was a married woman; that the contract was entered into under the laws of Oklahoma; and that the defendant was being given the "rush act," as it was being urged to use the "air mail both ways." The policy was a large one. It lacked only a short time to mature. The assignee had not given his full name and residence. While it is true that the age of the insured alone would not conclusively suggest an inquiry into the transaction, but that fact, together with the many other circumstances apparent in the transaction, should have suggested an inquiry. The defendant, in paying out on this contract, is not in the same position as a bank in cashing checks. It is a life insurance institution, engaged in collecting vast sums of money from its patrons and handling and conserving such funds to meet the requirements of its policyholders. That fund is a sacred fund. It is protected by rigid laws as to how the defendant shall handle and conserve it. The defendant recognized this, and, as disclosed by the evidence, when the amount to be paid out on a contract was as large as that involved in the case at bar, it required more than one person to pass upon the transaction. The defendant had an agent in Tulsa who was handling a part of the transaction, and who, by the slightest inquiry, could have developed all the facts surrounding the transaction. In Owen v. Miller et al., 190 Okl. 205, 122 P.2d 140, 142, the court lays down the rule as follows:

"* * * 'Actual notice consists of direct positive knowledge of the fact in question, or of such information as would be sufficient to put a prudent person on inquiry as to the fact in question. Such information constitutes notice of everything which such inquiry pursued in good faith would ordinarily disclose.' "

■ If the defendant had inquired of its agent in Tulsa or its branch office in Oklahoma City as to the identity of Benjamin Franklin Fields, it would have ascertained that Fields was a paroled convict living at the Mayo Hotel in Tulsa, together with the train of sordid facts developed in this case. Under the circumstances, it was the duty of the defendant to make such inquiry and its neglect to do so renders the doctrine of estoppel unavailable as a defense so far as its payment of the policy loan is concerned. It also makes the rule of where one of two innocent persons must suffer by the acts of a third, the one who enables the third person to occasion the loss must suffer it, equally unavailable as a defense on the policy loan.

Gooch v. Natural Gas Supply Co., 175 Okl. 153, 51 P.2d 932, 933:

"The rule that where one of two innocent persons must suffer from the fault of a third, the loss must be borne by the one whose negligence enabled the third to commit the fault, is not applicable when plaintiff fails in a duty of care which he owes to himself fully as imperative as any owed to

him by defendant, and by this alone brings himself within the scope of the effects of defendant's negligence."

The defendant cites many authorities where the courts have held it was inequitable to require a person to pay out money twice on the transactions involved in those cases. But a careful reading of those cases convinces the court that they are not applicable to the facts in the instant case. In those cases the monies paid out went either directly to the incompetent person or to his benefit. In the case at bar, none of the proceeds of the policy loan ever found its way to the insured or the beneficiary, or to their benefit. No consideration ever moved to the insured or the beneficiary for the assignment.

■ On the payment of the death claim we have a slightly different situation. Under the holding in McMurtray v. McMurtray et al., 67 Okl. 50, 168 P. 422, supra, there having been no change of beneficiary in the policy prior to the death of Allen J. Cammack, upon his death the proceeds of the policy immediately vested in Minnie O. Cammack as beneficiary. Under the authorities heretofore cited, the assignment of the policy was void. The mere fact that Minnie O. Cammack joined in the assignment neither added anything to or took anything from the instrument. She had nothing to convey and by the assignment conveyed nothing. By reason thereof the doctrine of estoppel does not apply. There is nothing in the evidence that discloses that the defendant relied upon her act in joining in the assignment that caused it to pay the death claim, but on the contrary, the evidence discloses that the defendant relied upon other matters.

The evidence does disclose that on July 9, 1940, and up to the time in 1941 when she was judicially determined to be an incompetent person, Minnie O. Cammack was not entirely without understanding but her ability to properly comprehend her business transactions had become impaired. At that period of her life her attempts to transact her business properly were pitiful. The evidence discloses that during that period she had come completely under the influence and domination of Fields and his associates; that they had caused her to sign instruments that transferred thousands of dollars of valuable holdings for their benefit, with no consideration passing to her for such transfers; and that at the very time of the hearing upon the application

for a guardian, Fields was trying to cash in valuable stocks transferred to him by her and the transfer was defeated by the prompt action of the trial judge.

■ There is no evidence that the assignment as delivered to Fields was in the same condition as it was when delivered to the defendant. It would have been an easy matter to run in the typewritten clause, after its execution and prior to its delivery to the defendant. The notary public at the time of its execution did not read it. Mrs. Cammack had no recollection of exactly what it contained. But the defendant contends, aside from these facts, even though the rule of estoppel should not apply, that the acts of Minnie O. Cammack in the entire transaction make applicable the rule governing a transaction where one of two innocent persons must suffer by the acts of a third, the one who enables the third to occasion the loss must suffer it. As was stated in substance in Gooch v. Natural Gas Supply Co., supra, this rule is not applicable when one "fails in a duty of care which he owes to himself fully as imperative as any owed to him" by the other party and by such alone brings himself within the scope of the effects of his own negligence.

Finally, the defendant contends that Minnie O. Cammack was guilty of laches in not calling to the attention of the defendant the conditions surrounding the assignment of the policy and, after his death, in not calling to the attention of the defendant the mental condition of the insured, thus permitting the defendant to innocently pay out the money to the assignee Fields.

■ As heretofore held, the defendant owed the duty to the insured not to pay out the proceeds of the policy on a void contract, such as this assignment. The mere fact that upon the death of the insured, the proceeds of the policy vested in Minnie O. Cammack, could not breathe validity into the void assignment and deprive the insured, or his beneficiary at his death, of the proceeds of the policy. Neither the doctrine of estoppel nor laches applies in such a case.

■ The fundamental function of a life insurance policy is protection to the beneficiary named therein. In most instances, the proceeds of a life insurance policy may be the last and only means of support for one aged, infirm or unable to earn a subsistence. The company issuing

the policy is in effect the trustee named by the insured to protect the interests of the beneficiary. This assignment, which upon its face could have been perfectly legal and valid, named as assignee a perfect stranger, which, considering the ages of the insured and the beneficiary, was a "red light" to the company, and all the facts and circumstances could have become known to the company upon the exercise of the slightest diligence.

Upon the consideration of all of the evidence, the court finds for the plaintiff. An exception is allowed. Findings of fact, conclusions of law and a form of judgment, consistent with this opinion, may be submitted within fifteen days from this date.