CASE 58—PETITION EQUITY—SEPTEMBER 25.

# Southerland vs. Southerland's adm'r.

APPEAL FROM SPENCER CIRCUIT COURT.

1. *An oral antenuptial contract,* that neither party was ever to claim or interfere with the property of the other, any more than if they had never married each other, being indisputably established—there being no creditors, such contract is unquestioned and unquestionable between the parties, and all claiming as volunteers under them.

2. *Gift, causa mortis.*—A note, the title and possession of which was held by a trustee, is held in this case to have passed as a gift, *causa mortis,* to the donee from her husband, who was the beneficiary of the note, without any actual delivery by the donor's own hands.

W. R. GRIGSBY,                                    For Appellant,

CITED—

7 *B. Mon.*, 444; *Basham vs. Chamberlin.*

*Roper's Law of Legacies*, 1 *and* 2.

5 *Littell*, 12; *Duncan's adm'r vs. Duncan.*

3 *Atk. Rep.*, 214; *Snellgrove vs. Bailey.*

1 *Duvall*, 402; *Kemper vs. Kemper's adm'r.*

2 *Edward's Chy. R.*, 333; 2 *Kent.*, *s. p.* 447.

BULLOCK & DAVIS and

J. B. COX,                                        For Appellee.

CITED—

2 *Wheat. R.*, 17; 10 *Conn. R.*, 480.

16 *Vermont*, 206; 31 *Maine*, 422.

14 *Barb. S. R.*, 243; 10 *Mass.*, 427.

16 *Ala. R.*, 221; 3 *Comstock*, 98.

5 *Gill & Johns.*, 58; *Bradley vs. Hunt.*

4 *Gratt. R.*, 479; *Miller vs. Jeffreys.*

6 *Harris' R.*, 226; *Headley vs. Kirby.*

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

In the year 1854 John Southerland, a widower, sixty-five years old, with one child, William, nearly grown, intermarried with the appellant, then a childless widow, he owning only a horse and a note on one Offutt for eight hundred dollars; and she owning a small farm, a few slaves, and a comfortable and befitting personalty. By an antenuptial contract, indisputably established by oral testimony, and confirmed by the continued recognitions of both parties, neither was ever to claim or interfere with the property of the other any more than if they had never married each other.

After confinement with a loathsome disease for more than two years, nursed by her carefully and affectionately all the time, he died intestate on the 2d of January, 1863.

At his death he owed only two debts—one a debt of honor, which he induced his wife to assume for his son, to Foster, for about one hundred dollars, and the other to Huston for one hundred and four dollars and eighty cents, both of which she paid before the institution of this suit, brought by his administrator, against the surviving widow for discovering assets and creditors, and making proper distribution. No creditors are discovered, and the intestate's son, who went off with the Confederate army, never returned, and is believed to be dead.

Without any marital right to any of her property, nothing ever owned by the intestate remained with the widow at his death except a horse and buggy, and the Offutt note, all of which she claimed as a gift, *causa mortis*. The circuit court, seeming to recognize the marriage contract as binding, adjudged against the validity of her asserted gift.

There being no creditors, the oral contract, which was one of the considerations of the marriage, is unquestioned and unquestionable between the parties, and all claiming as volunteers under them. And while there may be some doubt whether the buggy was paid for by husband or wife, it was recognized as hers; and the husband, during his fatal sickness, relinquished to her all his claim to both buggy and horse, which were in her possession, and afterwards remained under her dominion, and in her service. As between the present parties, we therefore adjudge the horse, buggy, and harness to be rightfully her property. We also consider the Offutt note as her property at her husband's death.

The actual possession and legal title in trust were in Mark E. Huston, to whom the intestate, as beneficial

owner, on his death-bed, only a few days before he died, said, that "he wished to leave the note in the hands of his wife; she had attended to and treated him with the utmost kindness in his affliction, and *he wanted her to have the note;* that she was security of Wm. Southerland in a note to F. Foster for a horse he had bought, and would have the money to pay; and he wanted it paid *out* of the note, and that his son, Wm. Southerland, was without a horse, and he wanted $100 of the note to be applied to the purchase of a horse for him; and that the old lady *would* hold the note and let him have money as he might need it." Four days afterwards Huston assigned and delivered the note to her, saying that the intestate had "*given*" it to her; and N. G. Thomas testified that he heard the intestate give to the appellant the same note two months before his death; but there neither was nor could then have been a delivery of it.

Now, it is clear that the intestate wished to give, tried to give, and believed that he had given, to the appellant, the Offutt note; and, though there was no formal delivery of it to her by his own hand, yet his dying declarations not only renounced his claim to possession and all interest, but vested her constructively with the use *and possession, through his trustee, directed to hold it for her.* The motive assigned shows that it was a gift for her own benefit, accompanied by only a *wish* that *she would,* if *needful,* appropriate a small portion of it to the use of his son William, if he should ever return, which he never did. This, according to reason and principle, ratified by authority, was an absolute gift and delivery to her, with all the elements and characteristics of the available "donation *causa mortis,*" which the administrator has no right to take away.

Wherefore, the judgment is reversed, and the cause remanded for a dismission of the petition, without costs, and without prejudice to any further proceeding for discovery of assets or creditors.