<hr />

CASE 61—PETITION EQUITY—DECEMBER 3.

# Mallory's Adm'rs v. Mallory's Adm'r.

APPEAL FROM TODD CIRCUIT COURT.

1. STATUTE OF FRAUDS—VERBAL ANTE-NUPTIAL CONTRACT.—An antenuptial contract stipulating that neither party shall have any interest in the property of the other by reason of the marriage is a contract "in consideration of marriage" within the meaning of the Statute of Frauds, and is not valid unless in writing. And while the husband, being *sui juris* all the time, may, by adhering to a verbal agreement made before marriage, to allow the wife to retain her property as her separate estate, deprive his representatives of the right to claim, after his death, that the title to the wife's personal property vested in him by the marriage, that rule can not apply to the wife, as she has no power to relinquish her marital rights, except in the mode pointed out by the statute.

2. SAME—PLEADING.—One who relies upon a contract embraced by the Statute of Frauds must allege in his pleading that it was in writing.

Mallory's Adm'rs v. Mallory's Adm'r.

3. DESCENT AND DISTRIBUTION—DEATH OF WIDOW BEFORE EXEMPT PROPERTY SET APART.—Upon the death of the husband the right to the property which the statute directs to be set apart to the widow vests at once in her, and if she dies before the property has been set apart her representatives may recover the property, or its value.

4. THE WIDOW IS ENTITLED TO THE PROPERTY WHICH THE STATUTE DIRECTS TO BE SET APART TO HER, whether or not she has any infant children, the only difference being that if there are no infant children residing in the family nothing shall be set apart for their support.

BEN. T. PERKINS, JR., EDWARD W. HINES FOR APPELLANT.

1. Where the widow dies before the articles of personal property exempt from distribution and sale have been set apart to her, those who take after her are entitled to recover what she would have received had the appraisers acted in her lifetime. (Crabtree v. Crabtree's Adm'r, MS. Op., Superior Court, January Term, 1890; Singleton v. Mc-Querry, 8 Ky. Law Rep., 782; Brown v. Joiner, 77 Ga., 232.)

2. The ante-nuptial contract relied on was a contract "in consideration of marriage" and therefore within the Statute of Frauds. (Potts v. Merritt, 14 B. M., 406; Forwood v. Forwood, 86 Ky., 114.)

3. Unless the contrary appears it is to be presumed the contract was intended to control the rights of the parties merely during their lives. (Brown's Adm'r v. Brown's Ex'r, 11 Ky. Law Rep., 798.)

H. G. PETRIE, W. B. REEVES FOR APPELLEE.

1. The ante-nuptial contract having been executed as far as it could be, it is valid and binding even if it was verbal. (Southerland v. Southerland, 5 Bush, 591; Basham v. Chamberlain, 7 B. M., 444.)

2. The widow having died before the articles exempt from distribution were set apart the title to the property did not vest in her and therefore did not pass to her distributees. (Newman v. Winlock's Adm'r, 3 Bush, 241.)

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

A. W. Mallory, the appellee's intestate, was a widower with children and C. L. Mallory, the appellant's intestate, was a widow with one child, a son; both of these persons owned property and married each other. The husband, the appellee's intestate, died, and in a few days thereafter, and before the personal property that the statute gives to the widow and which is to be set apart to her was set apart, C. L. Mallory, wife of A. W. Mallory, and the

appellant's intestate, died. This suit was instituted by appellant, as administrator, to recover of the appellee, as administrator, the value of said personal property, the same not having been set apart, and was, or some of it, on hand at the death of A. W. Mallory, but disposed of by the appellee.

The contention of the appellee is, that as there was an ante-nuptial contract between C. L. and A. W. Mallory that entitled each to retain the title of his and her property and dispose of the same as though no marriage had taken place, C. L. Mallory was not entitled to the property that the statute directs to be set apart to the widow upon the death of her husband.

It is not alleged that the ante-nuptial contract was in writing, and as section 1, chapter 22, General Statutes, requires contracts in consideration of marriage to be in writing, and if the contract relied on comes within said provision, it was necessary to allege that the contract was in writing and the answer, because of not alleging that fact, is not sufficient. Besides the proof fails to show that the contract was in writing.

Does the alleged contract come within said provision? It seems that the question has been settled and put beyond dispute by this court in the case of Potts v. Merritt and Potts, 14 B. M., 406. That case, like this, was a verbal ante-nuptial contract, and the Revised Statutes, then in force, had the same provision as to requiring the ante-nuptial contract to be in writing, as the General Statutes, *supra;* and this court held that the contract was not enforceable in law or in equity unless it was in writing. An ante-nuptial contract is one by which the parties agree to anticipate the general law controlling the marital rela-

tion and make a law in that regard to suit themselves, and consideration for the contract is the agreement to marry each other, which must be consummated, else the consideration fails.   So the contract clearly comes within the provision, *supra*, requiring contracts in consideration of marriage to be in writing.   If they are not in writing no action can be maintained on them, and in a case like this such contract is no defense to an action by the widow or her representative to enforce her marital rights.

It is a mistake to say that the property that chapter 31, section 11, of the General Statutes directs to be set apart to the widow only vests in the widow upon the setting the same apart to her.   By said statute the right to a certain kind of property, if on hand, if not its value, etc., vests *eo instanti*, by operation of law, in the widow upon the death of her husband.   The setting apart of said property is merely for the purpose of designating the individual pieces of property and valuing them and supplying their places with other property, etc., when required.   Said property vests in the widow and must be set apart to her whether or not she has any infant children, the only difference being that if there are no infant children residing in the family there shall be nothing set apart for their support.

The case of Southerland v. Southerland's Adm'r, 5 Bush, 591, is relied on as establishing the fact that a verbal ante-nuptial agreement is valid between the contracting parties and volunteers.   The leading facts of that case are, that the husband before marriage verbally agreed that his intended wife should retain her slaves, etc., after marriage as her separate estate, and after marriage and until his death he uniformily adhered to that agreement

and recognized said property as her separate estate, and she always claimed it and controlled it as such; and after the husband's death the court said that as between volunteers claiming the property by virtue of the husband's marital rights, and the wife, equity would uphold that agreement as consistent with the husband's power, he being *sui juris* all the time, to let the wife retain her property as her separate estate; but the wife has no power to relinquish her marital rights unless she pursues the law in that regard. The fact that the agreement was called ante-nuptial simply had reference to the fact that in that case it was made before marriage.

The judgment is reversed and cause remanded for further proceedings consistent with this opinion.