CASE 45—ACTION BY BESSIE ADAMS BY GUARDIAN, &C. AGAINST M. E.
HARRIS' ADMR. TO SURCHARGE A SETTLEMENT.—JAN. 21.

# Harris' Admr. v. Adams, &c.

### APPEAL FROM TODD CIRCUIT · COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   REVERSED.

DECEDENT'S ESTATES—EXEMPTIONS TO WIDOW—RIGHTS OF INFANT
CHILDREN.

Held:   1. Under Gen. St. c. 31, art. 36, section 11 (5), providing
that, in case of intestacy, certain articles are exempt, and shall
be set apart to the widow or infant children, and that, if there
are infant children and no widow, they shall be set apart to
the infants, the setting apart, where there is a widow, is to
her alone, and vests in her complete title.

W. L. REEVES, FOR APPELLANT.

### POINTS AND AUTHORITIES.

1. The revised statute and the general statutes differ in phrase-
ology as to property exempted from distribution.   This case arose
under the general statutes.

2. The revised statutes contain these words:   "For the use
and benefit of herself and the infant children of the intestate,
if any, residing with her."   Said language is entirely omitted
in the general statutes.   '

3. By the general statutes, the property is set apart to the
widow or infant children, the disjunctive conjunction "or" be-
ing used instead of the conjunctive conjunction "and."   This
phraseology is borne out by the subsequent provisions of the
statutes, which show that the infant children were never to
take anything, except in the event there was no surviving widow.

4. The only difference made where the residence of infant
children is with the widow is to increase the amount of pro-
visions set apart to her.   Such residence makes absolutely no
difference as to the amount of the other exempted articles.

5. The specific articles are exempted to the widow where the
intestate leaves no children, and where he leaves children, the
same exempted articles are set apart to her, whether the infant

children reside with her or elsewhere. For this reason, it is immaterial to the widow whether the infant children reside with her or reside elsewhere, except as to the article of provisions.

6. This court held, in construing the Kentucky Statutes and the General Statutes, the provisions of which are similar, that the exempted property was set apart to the widow, and that the title thereto vested absolutely in her. Alexander's Guard. v. Alexander's Admr., 88 Ky., 688; Mallory's Admr. v. Mallory's Admr., 92 Ky., 316; Commonwealth v. Bracken, 17 Ky. Law Rep., 1785; Nall v. Wuertley, 17 Ky. Law Rep., 115.

7. The personal property of the wife- in her possession when she marries, or which the husband subsequently reduces to possession, becomes his by operation of law. Hall v. New Farmer's Bank, 17 Ky., 702; Brewer v. Hubb, 19 Ky. Law Rep., 1992; McKay v. Mays, 16 Ky. Law Rep., 862; Carpenter v. Hazelrigg, 103 Ky., 538; Clark v. Miller, 88 Ky., 108.

8. By the express provisions of the general statutes, the husband took the whole surplus of a deceased wife's personal estate, and the word "surplus" was defined to be what was left after the payment of funeral expenses, charges of administration and debts. So that the statute itself provided that if the wife owned any property at her death, it went to pay her funeral expenses, charges of administration and debts, and the surplus remaining thereafter went to her husband.

9. Even if the fund in controversy was given by law to the wife and children of the intestate, it was chargeable with their support while they lived, and ought, reasonably, to go to pay for their clothes, doctor's bill and funeral expenses and the costs of administration afterwards on the death of one of them. But the court held that it was not liable for the debts contracted by the widow during her widowhood for the support of herself and children and was not liable for the physician's bills and burial expenses. This would make the property useless. If it could not be taken for such expenses, it could not be taken at all.

10. The contract made by Stokes was highly beneficial to the infant as it relieved her homestead, paid all the debts contracted for the support of her mother and sister while they lived and left her more than one- third of the gross fund.

11. Appellant should at least have credit for the fifteen dollars he paid to the first guardian of Bessie Adams.

PERKINS & TRIMBLE, ATTORNEYS FOR APPELLEE.

1. It is the contention of the plaintiff (appellee) that at the

Harris' Admr. v. Adams, &c.

death of plaintiff's father, the personal property which was owned by him and which was exempt from sale and distribution was for the joint use and benefit of his widow and infant children residing with her, and in the event of the death of either or any of them then to the survivor.

2. So we claim that upon the death of plaintiff's mother, the title to the personal property which was set apart to her as the widow of plaintiff's father, under the law vested in the plaintiff who was then an infant and the only surviving child of her deceased parents.

3. The fact that her mother had remarried does not give her second husband any title or right to said exempted property, but the same by operation of law then vests in the plaintiff, and the administrator of her mother has no right to sell or otherwise dispose of it or its proceeds.

### AUTHORITIES CITED.

Burgett v. Clark, 81 Ky., 518, 4 R., 518; Price, Guardian, v. Nichols, 12 R., 421; Wilson v. Parson's Admr., 20 R., 1931.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—REVERSING.

P. S. Greenfield died a resident of Todd county, Ky., on the 31st day of October, 1885, intestate, leaving a widow and two children, a homestead of less value than $1,000, and a small amount of personal property, all of which under the statute was exempt from execution.     It consisted of two mules, a cow, and a few articles of household furniture.     On the 22nd of October, 1890, the widow, M. E. Greenfield, married R. L. Harris, and from that time until her death, on the 28th of December, 1891, they occupied the homestead which had belonged to P. S. Greenfield.     At the date of her marriage, Mrs. Greenfield had possession of the same personal property which had been set apart to her upon the death of her first husband.     One of the infant children had in the meantime died, and the other lived with her mother, Mrs. Harris, until her death.     At his death, P. S. Greenfield owed a little money; and the widow, previous to her mar-

riage to Harris, had also contracted a few debts, and her husband was also chargeable subsequent to her death with her burial expenses and doctors' bills. After the death of Mrs. Harris, her brother, T. H. Stokes was appointed her administrator, and, by agreement with R. L. Harris, took possession of and sold the personal property on hand, which had been set apart to his decedent as widow of P. S. Greenfield, realizing therefor, in the aggregate, $301.85, $201.65 of which was applied by him to the discharge of the debts due by P. S. Greenfield and Mrs. Harris, above spoken of, the largest items of which were for doctors' bills for services rendered to P. S. Greenfield and Mrs. Harris and for the burial expenses of Mrs. Harris. After her death her brother was also appointed statutory guardian for her infant daughter, Bessie Greenfield, and rented her land for one year for $40. He was subsequently removed, and the appellee George W. Rudd appointed guardian in his stead. Bessie shortly before the institution of this suit married G. M. Adams, both of whom were then and are now infants. On the 13th of March, 1902, Rudd, as guardian for Bessie Adams, instituted this suit against the appellant, Thomas H. Stokes, as administrator of Mrs. Harris, to surcharge the settlement made by him, and alleged that the personal property which came into his hands as administrator was the same property which had been set apart, under subsection 5 of section 1401 of the Kentucky Statutes, to the widow and children of P. S. Greenfield, and that at the death of her mother, in 1891, the title to this property vested in her, under the statute, and was not liable to the debts of either her father or mother, and that her stepfather, R. L. Harris, had no interest therein; that the defendant had wrongfully and illegally taken possession of and sold it—and sought a judgment for the entire proceeds thereof. The defendants answered that at the death

of P. S. Greenfield the property in question was set apart
to his widow, and that the plaintiff had no interest therein;
that by her marriage to R. L. Harris, in 1891, it vested in
him, as her husband, and he had taken possession thereof
by virtue of this right, and had subsequently turned it over
to the defendant, with direction to sell it, pay the indebted-
ness of P. S. Greenfield and Mrs. Harris, and turn the sur-
plus over to the plaintiff.

The question presented for decision by the appeal is, to
whom, where the father and husband dies intestate, leaving
a widow and infant children, does the personal property
directed by the statute to be set apart to the "widow or in-
fant child or children" belong.

In construing section 11 of chapter 30 of Stanton's Re-
vised Statutes, which reads as follows:    "If an intestate
leaves a widow, the following property shall be set apart by
the appraisers of his estate, and vest in such widow for the
use and benefit of herself and the infant children of the in-
testate, if any, residing in the family, one work beast;  ,  ,  ,
but if there are no such infant children residing with the
widow, and there are adult or infant children not residing
with her, the provision contained in this section for the
widow, or the value of such portion thereof as she receives,
shall be charged to her in the distribution"—the superior
court, in Burgett v. Clarke, 4 Ky. Law Rep., 518, decided
that the property passed jointly to the widow and the infant
children residing with her, to be held in trust by the widow
while she lived, with power of disposition, use, and control
for the purposes named in the statute, but at her death such
of the property as had not been consumed or disposed of, and
such as was the product, by increase or exchange, of the
exempt property, vests in the surviving child in preference
to the surviving husband.    The decision in this case was

followed in Price v. Nichols, 12 Ky. Law Rep., 421, by the superior court.

The statute was subsequently changed by the General' Assembly, and the rights of the parties must be determined by the provisions of the new statute (Gen. St. c. 31, art., 36, section 11, subd. 5), which reads as follows: "The following list of articles are exempt from distribution and sale, and shall be set apart to the widow or infant children or child, by the appraisers of the estate, to wit: . . . If there is an infant child or children and no mother surviving, they shall set apart for the separate use of such infant child or children the articles aforesaid." In Alexander's Guardian v. Alexander's Adm'r, 86 Ky., 688, 9 R., 839, 7 S. W., 156; it was decided that the property set apart by this statute belonged exclusively to the widow. And in Mallory's Adm'rs v. Mallory's Adm'r, 92 Ky., 316, 13 R., 579, 17 S. W., 737, A. W. Mallory, the appellee's intestate, was a widower with children, and C. L Mallory, the appellant's intestate, was a widow with one child—a son. Both of these persons owned property, and married each other. The husband died, and in a few day thereafter, and before the personal property that the statute gives to the widow, and which is to be set apart to her, was set apart, the wife died. Suit was then instituted by appellant to recover of the appellee the value of this personal property on hand at the death of A. W. Mallory, but disposed of by appellee. The claim was resisted, and in the decision of the case the court said: "It is a mistake to say that the property that chapter 31, article 36, section 11, of the General Statutes, directs to be set apart to the widow, only vests in the widow upon the setting the same apart to her. By said statute the right to a certain kind of property, if on hand—if not on hand, its value, etc.—vests *eo instante* by operation of law in the

widow upon the death of her husband.    The setting apart
of said property is merely for the purpose of designating the
individual pieces of property and valuing them, and supplying
their places with other property, etc., when required.    Said
property vests in the widow, and must be set apart to her,
whether or not she has any infant children; the only differ-
ence being that, if there are no children residing in the family,
there shall be nothing set apart for her support."

In Commonwealth, by, etc. v. Bracken, etc., (17 R., 785)
32 S. W., 609, it was expressly decided that the widow took
the exempt property, or money set apart in lieu thereof,
against both the creditor and heirs at law, and one-third of
the rest of the estate, after deduction of debts and the ex-
empt property.    In Nall, etc., v. Wuertley, etc., (17 R., 115)
30 S. W., 208, it was decided that the widow could devise
a note for the price of a horse sold by her, which had been
set apart to her out of her husband's estate.    The decisions
cited above, coupled with the change in the phraseology of
the statute by the General Assembly, leave no doubt in our
minds that the setting apart is to the widow alone, and she
is vested with the complete title to the property.    In the
event there is no widow, then the property goes, under the
statute, to the surviving infant children; and it was decided
in Wilson v. Parson's Adm'r (20 R., 1931) 50 S. W.,
684, that, the proceeds of this property having been set apart
for the support of two infant children, on the death of one
of them its share went to the surviving child, and not to the
administrator of the deceased infant.    But in this case there
was no widow.

The widow, being named first, became the sole owner of
the property; and after her marriage to her second husband,
R. L. Harris, under the rule of the common-law, the title pass-
ed with the possession, to him.    See Hall v. New Farmers'

Bank's Trustee (98 Ky., 144, 17 R., 702) 32 S. W., 400; Brewer v. Hubbs (19 R., 1992) 44 S. W., 1129; McKay v. Mayes, etc. (16 R., 862) 29 S. W., 327; Carpenter v. Hazelrigg, 103 Ky., 538, 20 R., 231, 45 S. W., 666. The property having been turned over by him to the appellant, Stokes, under an agreement that it was to be sold, and the proceeds applied to the payment of certain debts, and the overplus secured to Bessie Adams, appellees were entitled to have the provisions of this trust enforced, and, after the payment of the debts enumerated, to have the surplus paid to her.

For reasons indicated herein, the judgment is reversed, and cause remanded for proceedings consistent herewith.

Petition for re-hearing by appellee overruled.