## Snyder v. Snyder, et al.

(Decided December 13, 1921.)

### Appeal from Daviess Circuit Court.

1. Deeds—Conveyance of Expectancy Void.—A deed made while the parent is living, which purports to convey a bare expectancy in land which a child hopes to inherit from his parent, is void.

2. Deeds—Where Mother Joined in Child's Deed Conveying Expectancy.—Where a mother joined in such a deed, and at her request the son who was purchasing his brother's expectancy paid the consideration to his brother, it follows that the consideration was sufficient, although it did not have the effect to validate the sale of the expectancy. He takes, as do the other heirs, his interest in the estate of his mother, the share described in the conveyance in which she joined being excluded from her estate.

BEN D. RINGO and E. B. ANDERSON for appellant.

CLEMENTS & CLEMENTS, LaVEGA CLEMENTS and ALBERT B. OBERST for appellees.

Opinion of the Court by Judge Sampson—Reversing.

In 1883, Mrs. Susan Snyder owned a farm situated in Daviess county. She had six children, Joseph and James T. Snyder being two sons. Her husband was dead. Her son, Joseph, then an infant, undertook by written contract to sell and convey to his brother, James T., his expectancy in his mother's landed estate for the consideration of $250.00, paid and to be paid in the manner set out in the contract. The mother joined in the writing for the purpose, as stated therein, of securing said interest, one-sixth to James T. Snyder, after her death. The writing is as follows:

"This indenture made and entered into this February 27th, 1883, between Joseph Snyder and Susan Snyder of

the first part, and James T. Snyder of the second part, all of Daviess county, Kentucky.

"WITNESSETH: That Joseph Snyder has sold to James T. Snyder one undivided sixth of the real estate owned by Susan Snyder, the mother of the other parties, now to secure said interest to said James T. Snyder after her death, said Susan Snyder unites with Joseph Snyder in the conveyance of said interest in the following tract of land about seven miles from Owensboro, Ky., in Daviess county, on the road from Owensboro to Calhoun, bound east by said road, west by Panther creek, north by the lands of Jane Rapier and south by the lands belonging to the estate of W. G. Howard, containing one hundred and seventy-five acres, the part here conveyed being one undivided sixth of said land above described, in consideration of one pair of mules valued at one hundred and fifty dollars, and one sorrel horse valued at seventy-five dollars, sold and delivered by the party of the second part to Joseph Snyder and in consideration of twenty-five dollars due and payable to said Joseph Snyder on the 1st day of June, 1883, by James T. Snyder, for which sum the party of the second part has executed his note to said Joseph Snyder to have and to hold said land or said one undivided sixth of said land to him, the said James T. Snyder, and his heirs forever. The said Joseph Snyder warrants and defends the interests aforesaid from all claims.

"In witness whereof, we hereunto subscribe our names.

his
"Joseph x Snyder
mark
her
"Susan x Snyder.
mark"

The mother, Mrs. Snyder, continued to reside upon the farm, claim and use it as her own until her death in 1907. Shortly thereafter one of the daughters commenced this action for a sale of the lands belonging to the estate of Susan Snyder for distribution of the proceeds among the six heirs. Promptly appellant, Joseph Snyder, answered and concurred in the prayer of the petition, averring that he was the owner of one-sixth interest therein. Thereupon James T. Snyder, the purchaser of the interest of his brother, Joseph, filed his answer and made it a cross-petition against Joseph Snyder, in which

answer it is averred that James T. Snyder is the owner of the interest which otherwise would have passed to Joseph Snyder and that the appellant, Joseph Snyder, had no interest in or claim to the landed estate of Susan Snyder, deceased, because he had sold and conveyed the same by the above copied writing to his brother, James T. Snyder. To this pleading Joseph Snyder filed a general demurrer, which the trial court overruled, holding the answer good. To this order and judgment Joseph Snyder excepted, and declining to further plead a judgment was entered sustaining the contract of sale between Joseph Snyder and James T. Snyder and adjudging the one-sixth interest of Joseph Snyder in the lands of his mother to pass to and vest in James T. Snyder.   Joseph Snyder appeals to this court.

It has been decided many times by this and other courts of last resort that a deed made while the parent is living, which purports to convey a bare expectancy in land which a child hopes to inherit from the parent is absolutely void. Furnish's Admr. v. Lilly, &c., 27 R. 226; Smith, &c. v. Dinguid, &c., 8 R. 64; Wheeler's Executors v. Wheeler, 2 Metcalfe 476; Caulder v. Chenault's Ex., 154 Ky. 777; Beard v. Griggs, J. J. Marshall (1) 22; Hunt v. Smith, 191 Ky. 443; McCall's Admr. v. Hampton, 33 L. R. A. 266; Spears v. Spaw, 25 L. R. A. 436 (N. S.); see notes, 32 L. R. A., page 595.

But for the fact that Susan Snyder, owner of the land and mother of Joseph and James T. Snyder, joined in the writing, the transaction under consideration must be held to be void, for to hold otherwise would validate a sale of a mere expectancy by an heir apparent—a sale without a thing *in esse,* which is utterly repugnant to our law. Some courts hold that such a deed or contract to which the ancestor assents or in which he concurs is valid, but this court is committed to the doctrine that no assent, concurrence, consent or acquiescence of the ancestor which is not expressed in a writing sufficient to divest the ancestor of title, present or in remainder, is unenforcible and the vendee takes nothing thereby, and in no event can a vendee take title under the deed of the expectant heir, but whatever interest or title he acquires is by virtue of the deed or contract of the ancestor alone; that such assent, acquiescence and knowledge on the part of the ancestor does not impart validity to an otherwise void contract for the sale of an expectancy.   Wheeler v.

Wheeler, *supra*, 98 Ky. 166; Furnish's Admr. v. Lilly, 84 Ky. 734; Elliott, &c. v. Leslie, 124 Ky. 553; Hall, et al. v. Hall, et al., 153 Ky. 379; Burton v. Campbell, et al., 176 Ky. 495; Flatt v. Flatt, et al., 189 Ky. 801; Hunt v. Smith, *supra*, 191 Ky. 443; 5 Corpus Juris, page 859; 2 R. C. L., page 606.

"The better view," says the author of 5 C. J., page 862, "seems to be that knowledge and consent of the ancestor, or its absence, is merely a circumstance of great weight upon the issue of unconscionableness or fraud in the transaction." After stating the rule of some courts that the consent of the ancestor will aid the conveyance of the heir apparent of his expectancy, if the transaction be free from fraud, the text in 5 R. C. L., page 608, is: "Some jurisdictions go still farther and hold that the expectancy of an heir of inheriting his father's estate is not an interest in any case capable of assignment in equity any more than at law, and therefore it would seem that the ancestor's consent becomes immaterial," and this text is based upon opinions from this as well as other courts.

The invalidity of these contracts is rested on the ground that it is essential to a sale that the thing to be sold have an actual or potential existence, that a mere possibility or contingency not founded on a right or coupled with an interest can not be the subject of a sale or assignment, Spears v. Spaw, 118 S. W. 275, and on the further ground that as no one can be the heir of a living person a transaction based on the idea of a future right to succession of a living person is devoid of consideration and can have no effect. Strong grounds of public policy are also invoked against such conveyances. The case under consideration, however, is somewhat stronger on its facts than any of the cases heretofore considered by this court, for Mrs. Susan Snyder is named in the written contract between Joseph Snyder and James T. Snyder as one of the parties of the first part. While the contract witnesseth: "That Joseph Snyder has sold to James T. Snyder one undivided sixth of the real estate owned by Susan Snyder," the mother of the other parties, 'she," the mother, "unites with Joseph in the conveyance of said interest in the following tract of land for the purpose of securing said interest to said James T. Snyder at her death." In none of the other cases which we have considered did we have a deed or a writing of

equal dignity with the one under consideration, purporting to convey the expectancy of one child to the other. In one case, however, the transaction between the children was recognized by the ancestor in his will which was in writing and signed by him, Hall v. Hall, 153 Ky. 379, and in other cases the ancestor consented to or acquiesced in the conveyance, Wheeler v. Wheeler, 2 Metcalfe 475; Alves v. Schlissenger, 81 Ky. 291, while in yet other cases writings in which the ancestor did not join as a party evidenced the consent or acquiescence of the ancestor to the transaction between the children. Elliott v. Leslie, 124 Ky. 553. In two cases, Lee v. Lee (2) Duvall 134, and McBee v. Myers (4) Bush 356, we upheld such sales, the ancestor having executed a writing sufficient in the judgment of the court to pass the title from the ancestor independently of the sale and conveyance by the heir apparent, but these two opinions have been severely criticised by later opinions of this court and by text writers and commentators generally, because they do not draw a clear distinction between the grounds upon which equitable relief is sometimes granted to vendees by courts and the legal effect which a writing obligatory signed by the ancestor must have on such transaction, nor state which ground is the basis of the conclusion reached in the opinion. Elliott v. Leslie, *supra*, Burton v. Campbell, 176 Ky. 495, 189 Ky. 801 and 191 Ky. 443. While the Lee and McBee opinions are somewhat confusing the writing signed by the ancestor appears to have been recognized as sufficient to divest him of title and the sale of the heir apparent of his expectancy was a mere incident and not a controlling fact.

The writing under consideration, while making Mrs. Susan Snyder party of the first part, recites that the transaction is one between Joseph and his brother James T., whereby the former sells to the latter one undivided sixth of the real estate owned by Susan Snyder. She is declared to be the owner, and the facts show her to be the seller and conveyor. The transfer is not to take effect until after the death of Susan Snyder and all of the consideration for the transaction was paid by James T. Snyder to Joseph Snyder. It will further be observed that the contract contains a covenant of warranty on the part of Joseph Snyder, but no such covenant was made or entered into on the part of the mother who owned the land.

Taking these facts into consideration, the first question is: Did the writing which purports to convey the one-sixth expectant interest of Joseph Snyder in the real estate owned by his mother, Susan Snyder, pass the expectancy of Joseph Snyder to his brother, James T. Snyder, on the death of the mother in 1907, or was the transaction void? If we eliminate Mrs. Susan Snyder from the contract there can be no question that it is wholly unenforcible because there was no estate *in esse* which Joseph Snyder owned or could convey in his mother's land. What he attempted to convey was a bare expectancy. This can not be done. His contract, therefore, was void as against public policy. This being true we must inquire what effect the acquiescence, concurrence and joinder of the mother in the deed had upon the conveyance. Would it vitalize and render enforcible the contract between the sons, Joseph and James T.? We think not, because such a contract being void cannot by any concurrence or acquiescence be made operative. This did not, however, preclude the mother, Mrs. Susan Snyder, on her own account and independently of the transaction between the sons from conveying a one-sixth undivided interest in her land in remainder to her son, James T. Snyder, if the transaction, as appears to be true, was in all respects regular, and this, we think, she did by the writing declared upon.

Beyond question the deed in form was sufficient to pass title to the real estate. Mrs. Snyder, a widow, the owner of the land, was *sui juris*. She was named as a grantor and it does not matter that a person having no real interest in the land was likewise so named.

It is admitted that the deed is sufficient in form, but it is argued that it is invalid as to Mrs. Snyder because there is no consideration to support it. In this counsel are in error, for the consideration paid by James T. Snyder to Joseph Snyder at the instance and request of the mother, Susan Snyder, was a sufficient consideration to support the deed. A valuable consideration may be some benefit conferred upon the party by whom the promise is made, or upon a third party at his instance or request or some detriment sustained, at the instance of the party promising, by the party in whose favor the promise is made. Stovall v. McCutchen, 107 Ky. 580. A valuable consideration might consist of anything of any value, and it may be the assumption of an obligation—the mere altering of the condition of the party to be affected. Gregory

v. McFarland, 1st Duvall 59. It is not necessary in all cases that a consideration to be valuable should consist of money or other articles of value paid and passing from the buyer to the seller; it may and does frequently consist of an inconvenience or injury to the buyer resulting from the act or assurance of the seller, and by this, even in contracts by parol at common law, where they are affected by no statutory provision, a valuable consideration is raised sufficient to support an action. Cundiff v. Hail, 3rd Marshall 54. A consideration sufficient to support a contract or a deed may be either a benefit to the promisor or a detriment to the promisee, and an advantage to the vendor or a loss or detriment to the vendee. It, therefore, follows that the consideration paid by James T. Snyder to his brother, Joseph Snyder, at the instance and request of the mother was and is sufficient consideration to support the deed from the mother to James T. Snyder, although it did not have the effect to validate the sale of the expectancy of Joseph to James T. Snyder.

Having reached the conclusion that the deed itself is a valid conveyance of a one-sixth undivided interest in the landed estate of Susan Snyder—not by reason of the sale and attempted conveyance by Joseph of an expectany to his brother but by reason of the force and effect of the writing signed by Mrs. Susan Snyder, which we hold to be a valid deed of Mrs. Susan Snyder to her son, James T. Snyder—it follows that Joseph did not part with his expectancy or right to inherit from his mother, and while he does not take one-sixth of all the lands owned by her at the time of the making of the deed in question, he does take, as do the other heirs, as heir of his mother, a one-sixth of the lands belonging to her estate at her death—the one-sixth interest sold to James T. being excluded—Joseph takes a one-sixth interest in the five-sixths of the land which Susan Snyder owned at the time and before she made the deed which is the subject of this litigation.

This court does not subscribe to the doctrine that a deed which purports to convey a bare expectancy and is therefore void and inoperative as a grant or conveyance may be upheld in equity as an executory agreement and enforced according to its intent, as some courts have held. A contract upon which the law looks with disfavor, and which is for that reason invalid, can in the nature of things have no force in equity. The *rationale* is overwhelmingly against such doctrine.

As this was a sale and conveyance by Susan Snyder of a one-sixth undivided interest in her farm to her son, James T., and the proceeds of the sale, $250.00, was paid to and received by Joseph, and which sum he by pleading is now offering to restore, it will be treated as an advancement from his mother's estate and Joseph must be charged with said sum so received by him, without interest, as none can be charged on an advancement, and he will receive from the estate a one-sixth undivided interest after the one-sixth of the whole land or its proceeds is set apart to James, but from the part received by Joseph will be deducted the sum of $250.00 received by him from his brother for the use and benefit of his mother and treated as an advancement.

As the judgment below held the deed in question to pass the expectancy of Joseph in his mother's land to his brother, James T. Snyder, and adjudged Joseph entitled to no interest in the estate of his mother, it must be reversed for proceedings consistent with this opinion.

Whole court sitting, Judge Clay dissenting.

### DISSENTING OPINION BY JUDGE CLAY.

By the deed in question Joseph Snyder, who was one of six children, sold and conveyed to his brother, James T. Snyder, an undivided one-sixth interest in a tract of land then owned by his mother, Susan Snyder. His mother united in the deed "to secure said interest to said James T. Snyder after her death."

The opinion holds that the deed is valid as to the mother but void as to Joseph, and that Joseph is entitled to a one-sixth interest in the remaining five-sixths of his mother's land. The ruling is based on the theory that Joseph conveyed a mere expectancy in his mother's estate, but such is not the case. Suppose that Joseph had first procured his mother to convey to him an undivided one-sixth interest in her land subject to her life estate, and he had then conveyed to his brother, would anyone contend for a moment that he had conveyed to his brother a mere expectancy? Certainly not. And yet the legal effect of the transaction is precisely the same as if this had been done. When the mother united in the deed, what would have been a mere expectancy, if Joseph alone had conveyed, became a certain, fixed and vested estate which passed to the grantee. To say that the transaction is void as to Joseph but valid as to the mother is to ignore

altogether the intention of the parties. Who sold? Joseph. Who received the consideration? Joseph. Who procured his mother to unite in the deed? Joseph. Why did she unite in the deed? Not for the purpose of selling generally an undivided one-sixth interest in her land to James, but for the sole purpose of vesting in James the title to the undivided one-sixth interest in the land sold by Joseph and which, but for the conveyance, would go to Joseph on her death. Clearly, one who has sold his interest in his mother's estate for a valuable consideration, and has procured his mother to unite in the deed for the purpose of giving legal effect to the transaction is no more entitled to claim that the deed is invalid than one who first acquired title from his mother and then conveyed to the grantee.

The injustice of the opinion becomes more manifest when we consider its effect upon the rights of the four children who were not parties to the contract. The only issue below was between Joseph and James. The question of Joseph's right to share in the remainder of his mother's estate was not presented by the pleadings or considered by the court. And yet this court, without giving the other children an opportunity to be heard on the question, rules that Joseph, who had sold his share in his mother's estate for a valuable consideration and vested the purchaser with a good title thereto, is now entitled to another division which will deprive his brothers and sisters of their fair share in their mother's estate.

As the chancellor adjudged that the deed was valid as to Joseph, I am of the opinion that the judgment should be affirmed.